Hillebrant v. Ashworth.

CHRISTIAN HILLEBRANT v. ABNER ASHWORTH AND OTHERS.

Whatever diversity of opinions and decisions there may have been in other Courts, upon the question whether a party to negotiable paper shall be permitted to give testimony to invalidate it, since the decision of the case of Parsons v. Phipps, (4 Tex. R. 341,) it has not been considered an open question in this Court. In that case the question underwent an elaborate examination ; and, upon a review of authorities, English and American, it was decided that being a party to the paper does not, of itself, render the person incompetent to testify.

See this case for evidence which was held sufficient to sustain a verdict against a recovery on a promissory note, given to compromise a threatened suit for slander, on the ground that the note was procured to be given by the defendant without any valid or sufficient consideration, and by taking advantage of his ignorance, and practicing upon his fears, of which the plaintiff had notice at least, if he was not a party.

Where it is pleaded that the note sued on was obtained by the payee by fraud, and that the defendant had notice thereof, and received the note without paying value therefor, and it is proved that the note was obtained by fraud as alleged, it would seem that it is not necessary in the first instance to prove further that the plaintiff, an indorsee, had notice, or received the note without paying value therefor ; but that it devolves on the plaintiff to show that the note came to his hands in the regular course of trade, before due, for value.

Hillebrant v. Ashworth.

Error from Jefferson. Tried below before the Hon. Peter W. Gray.

Suit by plaintiff in error against defendants in error, on a promissory note. Answer that the note was obtained by fraud and without consideration, and that the plaintiff had notice, and did not pay value for the note. The evidence was as follows :

The plaintiff offered the following note : "Taylor's Bayou, 16th November, 1852, twelve months after date I promise to pay J. P. Barns, or bearer, one thousand dollars without defalcation ; value received ; (Signed,) Abner Ashworth, his ⋈ mark, Sevenne Broussard, G. W. Hargroves.

Harrington, for defendant, testified that he was riding in the prairie with J. P. Barns, when they met Abner Ashworth, who asked Barns if he had not said, that he, Ashworth, had been drunk and fallen in Elliott's grave, when they were burying Elliott. Barns replied that he had heard so ; Ashworth asked Barns to tell him who had said so ; Barns refused to name his informant. Ashworth then said, if his informant was a man, he was a d—d liar ; if it was a woman she was a d—d whorish liar. Barns then said, " it was Melissa told me, my wife." On the cross-examination, in answer to a question by plaintiff's counsel, witness said that Ashworth did not retract what he had said, after Barns said it was Melissa told him. Melissa was the wife of Barns. Some time afterwards, on the first day of Fall Court, 1852, witness went with James Taylor to Ashworth's house ; Taylor and Ashworth went out together and had a conversation by themselves, which witness did not hear. They then came in where witness was, and Ashworth said he was a ruined man. Taylor, as they returned to Beaumont, told witness that he had three notes, one for one thousand, and two for five hundred dollars each, which he had got from Ashworth to compromise a suit which Barns was going to bring against Ashworth for slander of his wife ; that when Taylor and Ashworth came

in together, after their talk, Ashworth appeared alarmed or excited.

Joseph Gallier testified that, during the Fall Term, 1852, of the District Court, Christian Hillebrant and Lee came to his house. Plaintiff was going to see Ashworth about the purchase of Ashworth's cattle ; witness told plaintiff that Ashworth would be at his house soon ; that he had sent for him. Ashworth came over soon afterwards ; Hillebrant proposed to buy Ashworth's cattle, and wished to know if Ashworth would take the three notes, one for one thousand, and the other two for five hundred dollars each, that Ashworth had given to Barns ; Ashworth said he would if Hillebrant would give him his price for the cattle. They could not agree as to the price and did not trade. Hillebrant spoke of buying the notes ; Ashworth said that he would rather that Hillebrant should buy the notes than any one else, as he was able to buy them, and would not push him for the payment. Hillebrant asked Ashworth if he would pay the notes ; Ashworth said he always paid his just debts ; and Hillebrant said he would not purchase the notes unless Ashworth would give security.

Espar Hillebrant testified that he had heard his father, plaintiff, say that he had purchased a note on Ashworth for a thousand dollars, and paid money for it ; witness did not know ; knew nothing about it but what he heard his father say ; never heard any conversation between his father and Garner on the subject.

J. P. Barns testified that the note in evidence was given by Ashworth, to keep him from suing Ashworth for the abuse of his wife, at the time Barns and Harrington met Ashworth in the prairie. That Taylor had come to him and said that Ashworth had sent him to settle with him about the abuse of him and his wife in the prairie ; that witness referred him to David Garner, as his agent in the matter ; that witness, Taylor, Garner and Hillebrant talked about the matter on the first day of the Court held at Beaumont, at the Fall Term, 1852 ; that

Ashworth gave three notes, one for one thousand, the other two for five hundred dollars each ; that Taylor got the notes, and he and witness and Garner deposited them with the plaintiff, who was not to give them up to any body but witness and Garner, when both were present. Witness never had the notes in possession, except the note read in evidence ; that he had that note in his possession on the 21st December, 1852, and kept it one night ; he then sold it to David Garner for one hundred head of she cattle which Garner agreed to pay him for it ; that he has received nineteen cows and three calves, and Garner agreed to pay him the balance when the note is collected. When the note read in evidence was signed by the securities, Garner, by his direction, gave up to Ashworth the two notes for five hundred dollars each, and then Ashworth said. " you are a gentleman Mr. Barns, you and Mr. —— are the only two gentlemen on Taylor's Bayou."

Samuel Lee, for plaintiff, testified that he had been living with Hillebrant about ten years ; that in the Fall of 1852, during Court week, Hillebrant was going to Gallier's to purchase Ashworth's cattle, and asked witness to go with him. Hillebrant took with him three notes, given by Ashworth, payable to J. P. Barns, one for one thousand, the other two for five hundred dollars each, all signed by Ashworth only. Ashworth agreed to take the notes for the cattle, if Hillebrant would give his price for the cattle. The note in evidence was one of the notes that was there at the time, but that the signatures of Broussard and Hargroves was not to the note at the time. Ashworth and Hillebrant could not agree as to the price of the cattle. Hillebrant asked Ashworth if he would give security on the notes ; Ashworth refused to give security, and Hillebrant said he would not buy the notes unless Ashworth would give security. Ashworth said he would rather Hillebrant should buy the notes than any body else, because he was able to buy them and he would not push him for the payment. Hillebrant asked Ashworth if he would pay the

notes; Ashworth said he always paid his just debts. Ashworth had sufficient property to pay the notes; he was in good circumstances, as were Broussard and Hargroves.

Roberson testified that he was called upon to draw a note from Joseph Hebert, payable to Abner Ashworth, in Feb. 1853, part payment for the purchase of Ashworth's cattle. Hebert was to pay Ashworth one thousand dollars, when it should be ascertained that Broussard and Hargroves should not be injured by being security on a note that they had signed as security for Abner Ashworth. The note was for one thousand dollars, and was payable to J. P. Barns.

It was also in evidence that Ashworth was a free negro.

The plaintiff did not complain of the charge of the Court. Verdict and judgment for defendants.

There was a bill of exceptions to the competency of Barns, as a witness, to impeach the note.

*H. N. & M. M. Potter*, for plaintiff in error, referring to the fact that there was no appearance for the appellee in Parsons v. Phipps, 4 Tex. R. 341, cited Bank of the United States v. Dunn, 6 Pet. R. 51; Walton v. Shelley, 1 Term R. 164; Bank of the Metropolis v. Jones, 8 Pet.; United States v. Leffler, 11 Id. 86; Henderson v. Anderson, 3 How. U. S. R. 73; Scott v. Lloyd, 12 Pet. R. 45; Smith v. Stroder, 4 How. U. S. R., 404, as to the incompetency of Barns as a witness to impeach the note. They also argued that plaintiff was entitled to recover on the facts.

*B. C. Franklin*, for defendants in error.

WHEELER, J. Whatever diversity of opinions and decisions there may have been in other Courts, upon the question, whether a party to negotiable paper shall be permitted to give

testimony to invalidate it, since the decision of the case of Parsons v. Phipps, (4 Tex. R. 341,) it has not been considered an open question in this Court. In that case the question underwent an elaborate examination ; and, upon a review of authorities, English and American, it was decided that being a party to the paper does not, of itself, render the person incompetent to testify. The decision then made has since been considered, and is certainly entitled to be now regarded, as the settled law of the Court. There was, therefore, no error in admitting the testimony of the witness Barns.

Nor was there error in the refusal of the Court to grant a new trial. There can be little doubt that the note was procured to be given by the defendant Ashworth, without any valid or sufficient consideration, and by taking advantage of his ignorance, and practicing upon his fears ; and that, if the plaintiff was not a party to the imposition practiced upon the defendant, he, at least, was fully cognizant of it. The jury were warranted in the belief, that, if the defendant gave the plaintiff to understand that he would pay the note, he did so, while still laboring under the influence of the deception, under which he was induced to make it ; and that the plaintiff was aware of this when he purchased, if, in fact, he did purchase the note from the assignee of the payee. There is no other evidence than the plaintiffs own declarations, that he ever paid any value for the note. Yet, if a fact so material as it must have been apparent this was, existed, it would seem, it must have been susceptible of more satisfactory proof. Upon the whole evidence, we are of opinion that the verdict was not so manifestly contrary to the evidence as to require this Court to reverse the judgment of the District Court, refusing to set aside the verdict and grant a new trial. There is no error in the judgment and it is affirmed.

Judgment affirmed.