## E. ROTAN v. MAEDGEN & KENNON.

Decided December 5, 1900.

**1. Plea of Privilege—Trespass—Conspiracy.**

The obtaining and conversion of a promissory note in which plaintiffs had an interest by conspiracy with a resident of B. County was such a trespass com mitted there, within the meaning of the statute regulating venue (Revised Statutes, article 1194), as to authorize a party charged with such conspiracy and conversion to be sued in B. though residing in M. county and pleading his privilege.

**2. Same.**

The fact that a defendant charged in the petition as a coconspirator had admittedly been made a party for the purpose of subjecting his codefendant residing in M. County to suit in B. County, did not entitle the latter to compel suit against him in the county of his residence where the action was for a trespass committed in B. County.

**3. Negotiable Instrument—Assignee—Good Faith.**

One acquiring a negotiable instrument in due course of trade before maturity is protected against the claims of others thereto unless he acts in bad faith; and a mere suspicion that there may be a defect of title in its holder or knowledge of circumstances which would excite suspicion in the mind of a prudent man, is not sufficient to impair the title of the purchaser.

**4. Argument of Counsel.**

In a close case with the evidence apparently preponderating against the verdict, it was reversible error for counsel in argument to attempt to read from an instrument (application for continuance in another case by his adversary) which had not been offered in evidence, and where, on objection, he was stopped by the court, to indulge in sarcastic comments on having "hit them in a tender place."

APPEAL from Bell. Tried below before Hon. JNO. M. FURMAN.

*George W. Tyler,* for appellant.

*D. R. Pendleton,* for appellee.

KEY, ASSOCIATE JUSTICE.—Appellees sued appellant and D. W. McGlasson, to recover five-sevenths interest in a note for $3500, alleged to have been converted by appellant and McGlasson. The suit was brought in Bell County, where the plaintiffs and the defendant McGlasson resided. The defendant Rotan resided in McLennan County, and filed a plea in abatement, alleging that he was improperly sued in Bell County.

The plaintiff's petition charged the two defendants McGlasson and Rotan with conspiring together to cheat and defraud the plaintiffs of their interest in the note, and with appropriating and converting the same to their own use and benefit. All of these acts, the petition alleged were done in Bell County. The plea in abatement did not traverse or deny these averments. It did assert that Rotan was not sued for any crime, offense, or trespass committed in Bell County, for which a civil action in damages might lie, but that averment was no more than a demurrer to the plaintiffs' petition and presented no issue of fact to be submitted to the jury.

The statute authorizes a defendant to be sued out of the county of his residence when the plaintiff's cause of action is based upon a crime, offense, or trespass committed in the county where the suit is brought. The foundation of this suit is neither a crime nor offense, but, in our opinion, it is a trespass within the meaning of the statute referred to. The statute was first construed in Hill v. Kimball, 76 Texas, 210, where it was held that the word trespass was not confined to the restricted sense of an injury intentionally inflicted by force, but would embrace a tort negligently committed. This latter expression was afterwards modified in Ricker v. Shoemaker, 81 Texas, 22, where it was held that the trespass meant was some wrongful act committed, and not merely a tort resulting from the negligent omission to perform a duty. The rule laid down in Ricker v. Shoemaker was followed in Austin v. Cameron, 83 Texas, 351, and Wettermark v. Campbell, 93 Texas, 517.

The petition in this case charges Rotan with participation in a conspiracy and with the conversion of the plaintiff's property, both of which involve acts of commission, and come within the meaning of the term trespass, under the decisions referred to. The plea in abatement contained many averments of fact, among others that McGlasson was made a party defendant merely for the purpose of securing jurisdiction over the defendant Rotan. The record shows that the plaintiff admitted all the averments in the plea to be true, except the allegation that the defendant Rotan was not sued for any crime, offense, or trespass committed in Bell County; and, in view of these admissions, it is contended by appellant Rotan, against whom judgment was rendered, that the court erred in refusing to submit to the jury the question of venue raised by the plea in abatement.

We can not sustain this contention. The plea itself was radically defective, because it failed to deny those averments in the petition which charged Rotan with a trespass in Bell County, and because of such failure the court had jurisdiction over Rotan, although the plaintiffs may have admitted that they made McGlasson a defendant for the purpose of obtaining such jurisdiction. Having obtained jurisdiction over Rotan upon another ground not controverted by him in his plea, it is not material that they attempted to obtain jurisdiction by other means, and admitted that the sole object in resorting to such other means was for the purpose of obtaining jurisdiction over Rotan.

Without discussing in detail the objections made to the charge of the court, we deem it sufficient to say that none of them are regarded as tenable, and that no error was committed in refusing special instructions.

The court below appears to have held and instructed the jury that Rotan's acquisition of the note before maturity and indorsed by the payee vested the title in him, unless he had actual information of the rights of appellees, and this is the correct doctrine as applied to negotiable instruments. In other words, one acquiring such instruments in due course of trade before maturity, is protected against the claims of others, unless he acts in bad faith, and a "mere suspicion that there may

be a defect of title in its holder or knowledge of circumstances which would excite suspicion in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part." Buchanan v. Wren, 10 Texas Civ. App., 564; Turner v. Grobe, 44 S. W. Rep., 898; Cromwell v. Sac County, 96 U. S., 58.

While appellant Rotan, who had testified in his own behalf, was being cross-examined by appellees' counsel, a written document was presented to him which purported to be an application for a continuance made by him in a former suit brought by W. S. Wright, one of appellees' witnesses, and Rotan was asked if he signed the document and stated that he did. The document itself was not put in evidence, but appellees' counsel in his closing argument to the jury stated that it was an application for a continuance made by Rotan in the Wright case, on account of the absence of D. W. McGlasson, and started to read the document to the jury, and did read enough to show that it was an application for a continuance on account of the absence of D. W. McGlasson and another witness, when objection was interposed by Rotan's counsel, among other reasons because the document had never been offered or read in evidence. The court sustained the objection, and thereupon counsel, as disclosed by the bill of exceptions (proceeding with his argument to the jury), indulged in a very sarcastic rejoinder or repartee to defendant's counsel, saying among other things, in substance, these words: "O! Gentlemen of the jury, how these things hurt them! How they wince when you hit them in a tender place! How willing Mr. Rotan was to use the testimony of McGlasson when it was in his favor in the Wright case!" and other words of like import. Rotan's counsel here objected to the conduct referred to, which objection was sustained by the judge, who admonished appellees' counsel to confine himself to the record. The plaintiffs' case depended mainly upon the testimony of McGlasson, who was sharply contradicted by the testimony given by Rotan. Both of these witnesses were slightly corroborated, McGlasson by a witness named Wright, and Rotan by one named Taylor and a few minor circumstances disclosed by written instruments. The cross-examination developed the fact that McGlasson and Wright were very unfriendly to Rotan. He had been one of the principal witnesses in criminal prosecutions against them in which they were charged with felonies, and in which both were convicted by juries, though McGlasson obtained a new trial and was finally acquitted. Taylor was a disinterested witness, and appears to have testified without bias or prejudice.

The testimony being in this condition, if the jury considered the fact that Rotan had sought to use McGlasson as a witness for him in a former case, it is not improbable that they were influenced thereby in reaching a verdict against Rotan. If the application for continuance had been put in evidence, it may be that Rotan would have made an explanation to the jury that would have destroyed its force as a circumstance against him. At any rate, it had not been put in evidence, was no part of the

testimony before the jury, and it was improper for plaintiffs' counsel to attempt to read it to the jury and to tell the jury that Rotan had sought a continuance of the other case on account of the absence of the witness McGlasson. But the misconduct under consideration did not stop here. After the court had sustained appellant in his objection the plaintiffs' counsel sought to use appellant's exercise of his legal right to object as evidence against him. This of itself was improper, but counsel proceeded not only to call the attention of the jury to the fact that the objection was made, but made an argument on the excluded testimony by the language, "How willing Mr. Rotan was to use the testimony of McGlasson when it was in his favor in the Wright case!" This argument was in the teeth of the court's ruling,—in disregard of its authority,—highly prejudicial to appellant, and the jury should have been instructed to disregard it. The court did instruct the jury to disregard certain other remarks made by plaintiffs' counsel, but not those under consideration. As they were instructed to disregard some things said by appellees' counsel and no instruction given in reference to these, the jury may have felt at liberty to give them consideration. So we conclude that the assignment presenting this question must be sustained and a new trial awarded.

We make no ruling as to the admissibility in evidence of the application for a continuance in the former case; that question is not presented for decision. It was not admitted in evidence by the trial court, but appellees' counsel persisted in having the jury decide the case as though it was in evidence; and it is on account of such persistence that we reverse the judgment.

We are aware of the general rule in this State not to reverse on account of improper argument, unless the record indicates that the verdict is against the preponderance of the testimony. However, this rule has not always been adhered to. In the present case, in so far as can be determined from the record, it can not be said that there is a preponderance of the testimony in favor of the verdict. Such being the case, we are unable to say that the jury were not influenced by the matters complained of. Telegraph Co. v. Wingate, 6 Texas Civ. App., 394; Moss v. Sanger, 75 Texas, 322; Railway v. Johnson, 5 Texas Civ. App., 15; Mill Co. v. Hobbes, 5 Texas Civ. App., 34.

*Reversed and remanded.*