POPE v. BEAUCHAMP et al.

(Court of Civil Appeals of Texas. Amarillo. June 28, 1913. Rehearing Denied Oct. 11, 1913.)

1. BILLS AND NOTES (§ 497*)—BONA FIDE HOLDERS—BURDEN OF PROOF.

Where fraud is shown in the execution of a negotiable note, the burden rests upon one claiming to be a good-faith holder for value to prove his good faith; and hence, in an action on such a note, where plaintiff's indorsers neither answered nor testified, there was a presumption that they had notice of the fraud.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

2. BILLS AND NOTES (§ 337*)—BONA FIDE PURCHASER—LIS PENDENS.

The rule of lis pendens does not apply to negotiable instruments purchased in good faith for value before maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 818, 856–863; Dec. Dig. § 337.*]

3. BILLS AND NOTES (§ 337*)—BONA FIDE HOLDERS—NOTICE.

A party having knowledge of facts or circumstances involved in the negotiation of a note, the legal effect of which would avoid the transfer to him, cannot claim as a bona fide holder, no matter how honestly he may have believed that the law would sustain the transfer, but no suspicion of defect of title, knowledge, or circumstances which would excite such suspicion in the mind of a prudent man or put him on inquiry, nor even gross negligence, will affect his rights, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 818, 856–863; Dec. Dig. § 337.*]

4. BILLS AND NOTES (§ 357*)—BONA FIDE PURCHASERS—TAKING AS COLLATERAL SECURITY.

A person who took, as collateral security for a loan, a note tainted with fraud in its inception, without notice of the fraud, was entitled to protection as a bona fide purchaser to the extent of the loan, with interest.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 909–912, 961; Dec. Dig. § 357.*]

5. BILLS AND NOTES (§ 525*)—ACTIONS—SUFFICIENCY OF EVIDENCE—GOOD FAITH.

In an action to enforce a vendor's lien note against land, the conveyance of which to the vendor had, subsequent to the execution of the note, been set aside for fraud, evidence held sufficient to show that plaintiff, who took the note as collateral security for a loan, did so in good faith without notice.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. § 525.*]

Appeal from District Court, Denton County; Clem B. Potter, Judge.

Action by J. B. Pope against D. M. Beauchamp and others. From a judgment for plaintiff granting insufficient relief, he appeals. Affirmed in part and reversed and rendered in part.

V. K. Wedgeworth, of Ft. Worth, for appellant. Owsley & Owsley and Wilkerson & Wilkerson, all of Denton, for appellees.

HALL, J. On the 17th day of January, 1910, C. T. Wright procured from appellee J. L. Rutherford a deed to the N. V. Delgado survey in Titus county, and in payment therefor delivered to Rutherford two vendor's lien notes for $5,980 each, executed January 5, 1910, by G. P. Holford to C. C. Hutcherson. These notes purport to have been given in part payment for certain land in El Paso county, known as a part of the La Prieta grant. The record shows that in purchasing Rutherford's land Wright was guilty of the grossest fraud, to which Holford and Hutcherson were doubtless parties. No sale had been made from Hutcherson to Holford, and the records of El Paso county fail to show any such deed, and there was no such land as the La Prieta grant in El Paso county. On the 20th day of January, 1910, C. T. Wright made a deed to the land in Titus county, which he had obtained from Rutherford to D. M. Beauchamp, reciting

the consideration to be $14,000, of which $7,000 was stated to have been paid in cash, and for the remainder Beauchamp executed three notes, one for $3,000, due January 20, 1911, and two for $2,000 each, due January 20, 1912 and 1913, respectively. The record discloses that Beauchamp did not pay the $7,000 cash, but at Wright's suggestion signed the notes and gave them to him. Wright then executed a transfer to J. W. Maxwell of the three notes executed by Beauchamp, which transfer is dated January 20, 1910, and was filed for record on the 24th day of September, 1910. March 31, 1910, J. W. Maxwell, by written transfer, conveyed the $3,000 note and one of the $2,000 notes, which had been given by Beauchamp to Wright to Mrs. Dora Stephens, and this instrument was filed for record July 11, 1910. On October 1, 1910, Stephens and wife, by written transfer, conveyed an undivided one-fifth interest in and to said note to V. K. Wedgeworth, an attorney. This transfer was filed for record October 31, 1910. Wedgeworth, as attorney for Stephens and wife, went to Titus county about the 2d day of October, 1910, and district court convened that afternoon. He asked the clerk of the court to show him plaintiff's petition in the case of Rutherford v. Wright. On December 15, 1910, Wedgeworth borrowed $1,-500 from appellant, Pope, who was also his client, executed to him a note for the amount due one year after date. Pope did not know Maxwell or Stephens. He loaned Wedge-worth $1,500, and considered it a personal transaction. On the 22d day of January, 1910, Rutherford had instituted his suit in the district court of Titus county against Holford, Hutcherson, and Wright, to cancel the conveyance of his land to Wright, and on the 24th day of the same month filed an amended petition, making Will C. Geers and D. M. Beauchamp parties to the suit, and at the same time procured to be issued in said cause a writ of injunction restraining Wright and Geers from disposing of the notes executed by Beauchamp, and on the 24th day of January, 1910, filed in the office of the district clerk of Titus county a notice of lis pendens, properly showing the pendency of said suit. On the 11th day of October, 1910, judgment was entered in said cause in favor of Rutherford, canceling the deed which he had executed to Wright, and the deed from Wright to Beauchamp, and revesting in him the title and possession of the land. This suit is instituted by appellant, Pope, as the assignee of the $3,000 note described above, executed by Beauchamp, to Wright, which note was secured by a vendor's lien, and also by deed of trust on the Titus county land. Judgment is asked against D. M. Beauchamp, as maker, J. W. Maxwell and C. T. Wright as indorsers, and the prayer is for foreclosure against J. L. Rutherford, who it is alleged is asserting some right to the premises adverse to the plaintiff. Service of process was had on all parties except Wright, and plaintiff entered a nonsuit as to him. Upon the trial before a jury the plaintiff obtained judgment against Beauchamp and Maxwell, but the jury found against plaintiff as to foreclosure upon the premises, and judgment was rendered accordingly and from the judgment denying a foreclosure against Rutherford plaintiff alone appeals.

In addition to the facts above recited, the record discloses that the transfer from Maxwell to Stephens of the three notes was in consideration of the contents of a certain billiard and pool hall, consisting of billiard tables, pool tables, chairs, and other fixtures and furniture appurtenant thereto. On December 16, 1910, Stephens and wife, at the instance of Wedgeworth, for a recited consideration paid by him of $350 and 20 acres of land, at a net value of $1,700, conveyed the note for $3,000 sued upon to appellant. In both the transfers of this note from Maxwell to Mrs. Stephens and from Mrs. Stephens and her husband to Pope, it is provided that this particular note should constitute a superior lien upon the land to the other note held by Mrs. Stephens.

[1] Stephens and wife filed no answer in the case, and did not testify either in person or by deposition. There is nothing in this record which tends to show Stephens and wife to have been cognizant of or parties to the fraud, which taints the note in its inception, and the rule seems to be established that where fraud is shown in the execution of a negotiable note, the burden rests upon one claiming to be a good-faith holder for value to prove his good faith. As expressed in 8 Cyc. 236: "(B) Evidence of illegality or fraud in the origin or transfer of the paper throws on the holder the burden of proving his good faith." Hart v. West, 91 Tex. 184, 42 S. W. 544; Blum v. Loggins, 53 Tex. 121; Hillebrant v. Asheworth, 18 Tex. 307; People's National Bank v. Mulkey, 61 S. W. 528. This rule raises the presumption against Stephens and wife, in the absence of any testimony upon their part that they had no notice of the infirmity in the notes.

[2] It appears that in June or July, 1910, Wedgeworth became acquainted to some extent with the transaction, in that his testimony shows he saw an opinion upon Rutherford's abstract, written by a Cleburne attorney, in the month of March, 1910. Stephens and wife, having failed to collect the note, employed Wedgeworth, as hereinbefore stated, giving him a one-fifth undivided interest as the fee for his services in enforcing collection. At this time Rutherford's suit had been filed in Titus county, setting up the fraud perpetrated upon him by Wright and praying for a cancellation. Notice of lis pendens had also been filed. The rule of lis pendens does not apply to nego-

tiable instruments purchased in good faith for value before maturity. Gannon v. National Bank, 83 Tex. 274, 18 S. W. 573; Austin v. Lauderdale, 83 S. W. 413; Letcher v. Reese et al., 24 Tex. Civ. App. 537, 60 S. W. 256.

[3] It appears from the record that Wedgeworth believed upon good grounds that Stephens and wife were bona fide purchasers of the notes, and so informed appellant, Pope, and he showed his faith by his works, in purchasing from Stephens and wife the note in question and paying therefor property admitted to have been worth $2,050. In the purchase from Stephens and wife he conveyed to them this property, and had them transfer the note to appellant, Pope, as security for the loan of $1,500 made by Pope to him. If the record disclosed the fact that Stephens and wife were bona fide purchasers of the notes, Wedgeworth would be protected; but the presumption, in the absence of an affirmative showing on the part of Stephens and wife that they were the purchasers in good faith, being against them, Wedgeworth cannot claim any advantage through them. His rights must be determined from the facts as they relate particularly to him. The rule as laid down in 7 Cyc. 943, is: "If a party has knowledge of facts or circumstances involved in the negotiation of a note, the legal effect of which would avoid the transfer to him, he cannot claim as a bona fide holder, no matter how honestly he may have believed that the law would sustain the transfer." The rule is further announced that "neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or put him on inquiry, nor even gross negligence on the part of the taker, will affect his right, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. In other words, the question is now one of good or bad faith, and not of diligence or negligence." Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908; Rotan v. Maedgen, 24 Tex. Civ. App. 558, 59 S. W. 585.

[4] Since Wedgeworth is not a party to the suit, the question of his good faith in the purchase is a matter of no consideration, except in so far as it might affect the rights of the appellant, Pope, and it is therefore not necessary for us to determine that issue. The statement of facts affirmatively shows that Pope is a holder of the note as collateral security for the loan of $1,500 to Wedgeworth, without notice of any fraud in its inception or transfers, and as such is entitled to protection as a bona fide purchaser to the extent of the $1,500 loaned, with interest thereon, at 6 per cent. from December 17, 1910. People's National Bank v. Mulkey, 61 S. W. 528.

[5] Pope's testimony, in substance, is that he did not know Beauchamp, Wright, Maxwell, or Stephens and wife; that he had known Wedgeworth for several years, and took the notes from Stephens and wife on Wedgeworth's recommendation; that he had had several transactions with Wedgeworth before this loan of $1,500; that he took the note in return for the check for that amount given to Wedgeworth, made no investigation of the matter, but took Wedgeworth's word that the note was good; that Wedgeworth told him that he thought the title was good, and he believed him and relied on his statement in making the loan; that the note was transferred to him before he delivered the check; that he did not know of any defects in the title; that no one told him anything about the suit pending over the land; that he knew nothing of any suit or judgment; that Wedgeworth did not tell him he had been trying to collect the note, and this evidence is corroborated by the testimony of Wedgeworth himself, and a careful inspection of the record fails to disclose a circumstance or syllable of testimony contradicting it.

We think the court erred in overruling the motion for new trial; and, without considering the assignments of error in detail, the judgment against appellant is reversed and here rendered, foreclosing the vendor's lien and deed of trust upon the land in question to the extent of $1,500, with interest thereon from December 17, 1910, at the rate of 6 per cent. per annum, and the judgment in all things else is affirmed.