LANE et al. v. FIRST NAT. BANK OF
CANYON CITY.

(Court of Civil Appeals of Texas.   Amarillo.
March 1, 1913.   Rehearing Denied
March 22, 1913.)

1. BILLS AND NOTES (§ 523*) — EVIDENCE—
SUFFICIENCY.

Evidence, in an action on vendor's lien
notes after payment in full to the payee, *held*
to sustain a finding that the notes were pledged
by the payee to the plaintiff bank to secure a
loan to the payee by plaintiff; the transaction
being through another bank, which acted as the
payee's agent.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1822–1825; Dec. Dig. §
523.*]

2. BILLS AND NOTES (§ 358*)—TRANSFER AS
COLLATERAL—PRE-EXISTING DEBT.

The transfer of a negotiable note as col-
lateral security for a pre-existing debt is in
due course of trade and for a valuable consid-
eration.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. §
358.*]

3. BILLS AND NOTES (§ 427*)—PAYMENT AFT-
ER TRANSFER—DEFENSE.

Where a person, who assumed the payment
of negotiable vendor's lien notes, paid the
amount of them, before maturity, to the orig-
inal payee, though by reasonable diligence he
could have discovered that the payee had pledg-
ed them to a bank as collateral, and that such
bank had them in its possession, such payment
and a release executed by the payee could not
defeat the bank's action to recover on the notes
and foreclose the vendor's lien.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1233–1244; Dec. Dig. §
427.*]

Appeal from District Court, Lubbock Coun-
ty; W. R. Spencer, Judge.

Action by the First National Bank of Can-
yon City against C. C. Lane and others.
From a judgment for plaintiff, defendants
appeal. Affirmed.

W. F. Schenck and W. D. Benson, both of
Lubbock, for appellants.   Bean & Klett and
R. J. Dillard, all of Lubbock, for appellee.

HUFF, C. J.   The appellee, First National
Bank of Canyon, brought suit in the district
court of Lubbock county against C. C. Lane,
R. I. Tubbs, and Cora L. Tubbs on two ven-
dor's lien notes, each for the sum of $750,
payable to J. J. Dillard, or his order, dated
February 26, 1909, due in one and two years
from their respective dates, each bearing in-
terest at the rate of 8 per cent. per annum,
with the usual stipulation for 10 per cent.
attorney's fees, and also to foreclose a ven-
dor's lien on lots 1, 2, 7, and 8 of block 16,
Dillard's subdivision of survey 1, block E2,
in Lubbock county.   The case was tried, with-
out the intervention of a jury, before the
trial judge, who rendered judgment against
C. C. Lane and R. I. Tubbs for the amount
of the notes, principal, interest, and attor-
ney's fees, and foreclosed the vendor's lien
against the above-mentioned lots as to C. C.

Lane, R. I. Tubbs, and Cora L. Tubbs, and
also gave judgment against J. J. Dillard for
said sum of money in favor of R. I. Tubbs
on Tubbs' cross-petition, bringing Dillard in-
to the suit, and in which he asked for such
judgment.   The trial court did not file con-
clusions of fact and law, and the case is be-
fore us alone upon the statement of facts
and the record as made in that court.   C. C.
Lane, R. I. Tubbs, and Cora L. Tubbs bring
the case by appeal before us.   The case will
be understood by recitation of the material
facts.

On the 26th day of February, 1909, C. C.
Lane purchased the lots in question from
J. J. Dillard, and as part of the purchase
price executed the two notes for $750 each,
retaining in their face the vendor's lien on
the lots above mentioned, and the lien was
also retained on said lots in the deed from
Dillard to Lane.   On the 24th day of August,
1909, C. C. Lane conveyed the lots to R. I.
Tubbs for the recited consideration of $1,000
cash, and one note for $1,000, dated Febru-
ary 26, 1909, and due August 26, 1909, as-
sumed by Tubbs, and the further considera-
tion of the assumption of the payment of the
two notes for $750 sued on in this case.   On
the 8th day of April, 1909, J. J. Dillard ex-
ecuted his note for $3,620.50, due 120 days
after date, to the appellee, the First National
Bank of Canyon.   This note was sent to the
appellee and received at its banking house
in Canyon City by due course of mail, with
the two notes for $750, sued on, attached as
collateral security.   The notes so executed
and attached were received by appellee in
April, 1909, soon after the 8th day of April.
At the time appellee came into possession of
the two $750 notes, they were indorsed on
the back of each by J. J. Dillard in blank.
On the 2d day of October, 1909, J. J. Dillard
executed a release of the vendor's lien on
the lots in question, which was retained in
his deed to C. C. Lane and in the notes to
secure the payment of the two $750 notes,
"reciting that said notes had been paid to the
said Dillard, the legal and equitable holder
and owner of said notes at the time of the
payment, releasing all of the lien that he
had on said property by virtue of being the
owner of said notes."

R. I. Tubbs, by his testimony, shows that
he bought the lots from C. C. Lane and paid
him $3,500 therefor, $1000 cash and assumed
a $1,000 personal note of Lane's, which he
afterwards paid, and also assumed the pay-
ment of the two $750 vendor's lien notes, pay-
able to the order of J. J. Dillard.   He paid
the notes to J. J. Dillard some few days
before the release was executed by Dillard.
At the time he did so, Dillard stated to him
that he did not have in his possession the
two notes; that they were up at the bank,
and Dillard promised to get them.   He stat-
ed he was trading Dillard in payment of the

two notes another note, and at the time they reached the agreement he did not have his note with him. The next time he came to town he brought his note with him and indorsed it over to Dillard. Dillard then told him he did not have his notes, and had forgotten to get them and did not have them. After he indorsed his note to Dillard, Dillard executed the release, and he (Tubbs) thought no more about it until suits were brought. He stated he had no actual notice that appellee had held the notes by transfer or as collateral, or that they had been transferred to any one else.

[1] J. J. Dillard testified that he placed the notes with the First National Bank of Lubbock, as collateral, with other notes; that he did not place these notes with the appellee as collateral. They were indorsed by him in pencil, and were placed with the Lubbock bank that it might know his assets. He testified he never did instruct the Lubbock bank to deliver these notes to the appellee as collateral security, and that he was not consulted about it. He states that he went to the Lubbock bank, after learning the notes were in its hands, and tried to substitute the note he got from Tubbs for the two notes sued on, and the bank could not find them and came to the conclusion at that time that they were at Canyon City, and were up as collateral with the appellee for the note he owed it. He then tried to have the note he got from Tubbs substituted for his two notes with appellee, but his offer was declined. He further testified on cross-examination: "For this reason I say that the First National Bank of Lubbock was evidently acting as my agent. I had no transaction with the First National Bank of Canyon, only through the First National Bank of Lubbock. They came to me, or I went to them; at any rate, there was an agreement arrived at, by which they were to get certain money at Canyon City, and nothing was said about the collateral, and they had the collateral in the bank, and they made the distribution of it, and distributed it as they saw fit."

In cause No. 435, First National Bank of Canyon v. J. J. Dillard, in the district court of Lubbock county, wherein appellee sought judgment against Dillard on the $3,620.55 note, together with another note, Dillard, in his answer thereto, alleged that he had placed up the two vendor's lien notes herein sued on, and that they were delivered by Dillard to the appellee as collateral security. It is not stated in the answer on which note it was given as collateral security, whether the $3,620.55 or the $2,745.40, the other note in that suit.

The president of the appellee bank, L. T. Lester, testified: His bank got Dillard's $3,620.55 note through the Lubbock bank, and that when it came the two $750 notes were attached to it as collateral. That appellee made a loan to Dillard in the amount of $3,600. This loan was effected through the Lubbock bank. The Lubbock bank inquired of appellee whether it would make the loan, and appellee agreed to do so if the collateral was sufficient. The Lubbock bank sent the Dillard note with the two vendor's lien notes and two Handley notes for $1,000 each, attached as security, and the money was then paid into the Lubbock bank.

We find in support of the judgment of the trial court, that Dillard authorized the First National Bank of Lubbock to negotiate a loan for Dillard with appellee, and that he executed his note for $3,620.55, payable to appellee, and that Dillard indorsed the two notes sued on in blank and authorized the same to be attached to the $3,620.55 note as collateral security thereof; thereupon they were sent to appellee, which loaned to him the amount evidenced by the note, which was paid for Dillard into the Lubbock bank.

Appellee did not authorize Dillard to collect the two vendor's lien notes for $750, and if he did so he did it without authority from appellee. The appellee did not know at the time Tubbs paid the same that he had done so, and never received the proceeds so paid Dillard. The appellee did not notify Tubbs or Lane that it held the two notes for $750, or call on them to pay the same.

J. J. Dillard did not make a written transfer to appellee or any one else of the two notes for $750, or of the vendor's lien on the lots, further than his indorsement thereon in blank; and the deed or lien records of Lubbock county do not show such transfer. The deeds from Dillard to Lane and from Lane to Tubbs were duly recorded. The record in this case does not show the date of such record.

The $3,620.55 note, to which the $750 notes were attached as collateral, has not been paid, and is still a valid and subsisting indebtedness, which has been merged into a judgment, and which judgment is still unpaid.

The appellants Lane and Tubbs both assert there is no evidence showing that Dillard pledged the two notes as security for the $3,620.55 note, which he executed to appellee. As will be seen from our findings of fact, the judgment of the court had testimony to support the conclusions established thereby. Dillard himself admits the indorsement of the two notes, and that he placed them with the Lubbock bank, which, he practically admits, was acting as his agent in getting the money. The Lubbock bank got the money from appellee on Dillard's notes, and before the appellee would advance the money on his note alone it required collateral. The notes were sent to appellee by the Lubbock bank, attached to Dillard's note as collateral. The money was thereupon sent to the Lubbock bank. If Dillard did not get the money, he does not say so. The testimony should be viewed in the light most favorable to the court's judg-

ment, and we therefore overrule the several assignments on that point.

[2] It has been held, and is now the settled law in this state, that the transfer of a negotiable note as collateral security for a pre-existing debt is in due course of trade and for a valuable consideration. Liddell v. Crain, 53 Tex. 555. The case is much stronger for holding the assignee a bona fide purchaser when money is advanced by him for the benefit of the apparent holder of the note. Kauffman & Runge v. Robey, 60 Tex. 308, 48 Am. Rep. 264.

[3] It is insisted that Tubbs paid the note to J. J. Dillard, the original payee in the notes, and secured release thereof, and that appellee cannot recover in this action. It is not claimed that appellee gave to Dillard or any one else authority to receive payment of the notes, but, on the contrary, it affirmatively appears from the testimony that he had no such authority from appellee. This payment was made in October, 1909, before the first one of the notes was due in February, 1910; so neither note was due when the payment purports to have been made. Staff v. First National Bank, 97 S. W. 1089; Brown v. Thompson, 79 Tex. 58, 15 S. W. 169; Rohde v. Lafayette Lodge, 15 Tex. 446.

Lane executed negotiable notes to Dillard, and Tubbs assumed to pay them. It would be requiring a greater amount of vigilance on the part of appellee to notify Lane and Tubbs that it was the holder of the notes five or six months before the first was due than is required by law. Lane, having executed negotiable notes, and Tubbs, having assumed to pay them, knew that the same could be easily transferred in due course of trade. Any sort of prudence on Tubbs' part would have demanded the delivery of the notes before they were paid. Having failed to do this, Tubbs has no one to blame but his own credulity. Certainly appellee did not actuate him to such folly by any act on its part.

It is said the court was in error in foreclosing the lien on the lots. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 55, is relied on to support this contention. That decision was one to the effect that vendor's lien stood in the same position as mortgages with reference to the registration laws. The statute requiring registration provides that mortgages "shall be void as to all creditors and subsequent purchasers for valuable consideration without notice." Appellants are neither subsequent purchasers nor creditors. They both had notice there was a vendor's lien on the lots, and that it was evidenced by negotiable notes. When the notes were paid, they knew the payee did not have them. By walking over to the bank at Lubbock, they could have found where the notes then were. This statute will not relieve them from their own negligence in the matter. It

is pressing the registration law very far to say that the maker can get the payee in a negotiable note to execute a release of the lien, when he knew, or should have known by the exercise of any sort of diligence, that the payee was not then the owner and holder of the note, and then claim to be a creditor or purchaser of such release for value without notice. We think the case of Degenhart v. Short, 15 Tex. Civ. App. 636, 40 S. W. 150, cited by appellee, is in point, and sustains the judgment of the trial court. The cases cited by appellants are distinguishable from this, as we believe it will be found in all of them that the parties in those cases were either subsequent purchasers or lienholders without notice and for value.

After a careful review of the record in this case, we find no such error as requires a reversal at our hands, and we therefore affirm the judgment of the lower court.