DANIEL v. SPAETH. (No. 631.)

(Court of Civil Appeals of Texas. Amarillo. June 6, 1914.)

1. BILLS AND NOTES (§ 497*)—PRESUMPTIONS.
    Where a negotiable instrument is shown to have been indorsed in blank, there is a presumption that it was so indorsed and transferred before maturity.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

2. BILLS AND NOTES (§ 358*)—TRANSFER—CONSIDERATION.
    Indebtedness is a sufficient consideration for the transfer of a note.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. § 358.*]

3. BILLS AND NOTES (§ 358*) — BONA FIDE PURCHASERS—CONSIDERATION.
    Though plaintiff received a note in payment of a debt which he had lost all hope of collecting, the debt was a valuable consideration for the note, so that he took it free from defenses such as want of consideration, which could have been asserted against the payee.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. § 358.*]

4. BILLS AND NOTES (§ 497*) — BURDEN OF PROOF.
    In an action by an indorsee of a note who took it before maturity, the maker has the burden of proving that the indorsee received it without consideration and that he took it with notice that the consideration therefor had failed.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

5. BILLS AND NOTES (§ 497*)—ACTIONS—BURDEN OF PROOF.
    In an action by an indorsee of a note procured by fraud or based on illegal consideration, the maker first has the burden of proving the fraud or illegality, but upon that proof the indorsee must show that he paid consideration before maturity, whereupon the maker is bound to show that he took the note with knowledge of the fraud or illegality.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

6. BILLS AND NOTES (§ 497*)—DEFENSES—NOTICE.
    Where a maker of a note seeks to defeat recovery by an indorsee on the ground that the consideration failed, he must show that the indorsee at the time he received the note had notice of failure of consideration.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

7. BILLS AND NOTES (§ 337*)—DEFENSES—NOTICE—FAILURE OF CONSIDERATION.
    An indorsee of a note who has no actual notice of defenses available by the maker against the payee is not charged with constructive notice of such defenses, unless the circumstances are such that bad faith must be presumed in the absence of inquiry.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 818, 856–863; Dec. Dig. § 337.*]

8. BILLS AND NOTES (§ 525*)—ACTIONS—DEFENSES—EVIDENCE.
    In an action by an indorsee of a note, evidence *held* insufficient to show that he was charged with notice of the failure of consideration for the note.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. § 525.*]

Appeal from Cooke County Court; R. V. Bell, Judge.

------

Action by Russ Daniel against Albert Spaeth, begun in justice's court and appealed to the county court. From a judgment there for defendant, plaintiff appeals. Reversed and rendered.

Garnett & Garnett, of Gainesville, for appellant. Potter, Culp & Culp, of Gainesville, for appellee.

HUFF, C. J. This case originated in the justice court of precinct No. 1, Cooke county, Tex., and from a judgment in that court the case was appealed to the county court of that county; in the county court the case was tried before a jury and resulted in a verdict and judgment against appellant, from which appellant appeals.

The appellant, Russ Daniel, sued Albert Spaeth, appellee, on a note dated December 2, 1911, for $130, due six months after date, payable to the order of Weisenborn Manufacturing Company, with interest after date at the rate of 7 per cent. per annum, and providing for 10 per cent. attorneys' fees; the note was signed by appellee, Albert Spaeth, and was indorsed by Weisenborn Manufacturing Company, per R. L. Leeson, secretary and treasurer.

The appellee answered by general denial and also alleged specially that the note was obtained from him by false and fraudulent statements and representations; that Weisenborn Manufacturing Company represented that it was the owner of a certain plant hoe, commonly called a cotton chopper, to which it had obtained a patent and that the machine had been tried and tested; that it worked admirably and would do good, efficient work and the work of a dozen hands with ordinary hoes; and that said company also sold appellee the patent right in and to Cooke county, and that appellee was induced to purchase the machine and the patent right by the statements and representations of said company, and to execute the note therefor; that the statements were false; and that the machine was incomplete and would not do the work recommended, and is of no value. He further alleged that the machine was to be delivered by the company not later than the month of February, 1912; that it was not delivered until the 3d of June, 1912, after the cotton chopping was over and too late to use the machine purchased in his own field or to sell to others in Cooke county; that it was material that he have the machine to do his own cotton chopping and as a sample to sell to others if it would do the work; that he would not have executed the notes and bought the machine and patent right if he had not been assured that the machine would be received in time for the cotton season; that the failure to deliver the machine until the 3d day of June deprived appellee of the use of the machine or as a demonstrator for others, so that he could sell the same. After the ma-

chine reached appellee, he tried and tested it and found it was wholly deficient or worthless; that if the appellant acquired the note before maturity he did not acquire it in due course of trade and did not pay a valuable consideration therefor and is not an innocent holder thereof; that the appellant knew of the fraudulent means by which the company had induced appellee to execute the note, and he also knew of the failure of consideration for which said note was given and knew sufficient facts concerning the execution of the note to put a prudent person upon inquiry.

The note sued on was introduced in evidence and is substantially as set out by appellant in his statement. It is indorsed in blank by the Weisenborn Manufacturing Company, as above set out. The appellee testified he was in Houston December 2, 1911. He there saw a machine, a cotton chopper, and while examining it Mr. Weisenborn, the president of the company, which was going to manufacture the machine, approached appellee and asked him if he (appellee) lived in a cotton country, and, when appellee informed Weisenborn that he did, he invited appellee to his office after dinner.

"When I went back after dinner and went to his office, he got me into buying one of these machines and the right to sell them in Cooke county, Tex. After telling him I lived in North Texas, a cotton country, he told me that I ought to have one of these choppers and that I ought to buy the right to sell them in my county; that I could make more money out of selling these machines than I could off a 1,000-acre farm. He then talked me into buying the sale rights. He said he would send me a sample by the first part of February, 1912. I then executed the contract purchasing the sale right in Cooke county, and one of the machines."

The appellee introduced the "district agent's agreement," by the terms of which the Weisenborn Manufacturing Company, appointed L. A. Spaeth, district agent, to sell the Weisenborn plant hoe at wholesale or retail for five years in Cooke county, "and agrees to ship him whenever he may order, one sample machine, at the price of $60 each, f. o. b. the factory, and as many more as he may sell in the above-named territory, at the same price, $60.00 each, to supply sales. He has this day settled by $26.00 cash, 60 da. note, $104.00; 6 mos. note, $130.00, for $260.00, same being payments in full for said sample machine for contract and privilege of territory named." This agency contract stipulated the price for which the machines were to be sold and the discount to be allowed appellee, etc. It is stipulated that if 12 months shall lapse without 10 machines being ordered, the company, at its election, terminates the contract and may appoint a new agent. If the contract is so ended, the agent might, within 30 days after receiving notice thereof, forward to the factory all sample machines, and upon receipt the company would pay him the price he paid for them and, upon payment of such sum, "all rights, liabilities and duties of both parties

shall, as to each other, cease, terminate and end." Then follows the stipulation as to the duties of the agent, etc. This agency contract is dated December 2, 1911. The appellee also introduced letters from G. P. A. Weisenborn, addressed to him, dated respectively December 29, 1911, January 6, January 23, February 5, February 19, and March 15, 1912, in which Weisenborn asked appellee to pay off the two notes one for $104 and one for $130, agreeing to discount them, and in the last letter informed appellee there would be some delay in the delivery of the cotton chopper; that certain improvements were being made which would render it more perfect and shipments would be made in the near future. The appellee also introduced several letters from appellant Russ Daniel, to himself, in substance as follows. One letter dated April 10, 1912, in which Daniel states:

"I am sure I did not intend any sort of discourtesy much less get mad. The notes I believe are signed unconditionally and as such I have a right to require payment as an innocent purchaser. All know that. I beg to suggest that if there is anything between you and Mr. Weisenborn or Weisenborn Manufacturing Company it is not a matter for me, but between you and them. I believe your lawyer or banker, either or both, will so advise you. Please be kind enough to say whether you intend to pay the notes without contest. I need the money. Please consult attorneys or your banker and advise me. I have nothing to do with and know nothing about any failure of contract. You can take that up with parties."

On May 1, 1912, he wrote:

"I expected to have heard from you to-day in reply to my last. Please write me at once; also a line in care of the Brazos Hotel, Houston, as I rather expect I may have to go there for a few days and I want to have your reply by that time. As I understand, you do not dispute the notes and they are due by you but the company was to ship you a machine which it has not done. Please confirm this. I know from what the bank says of you your agreements are good. I very much prefer to discommode myself rather than you and when it appeared the company had not come up with agreements I preferred to insist on its doing so to enforcing written contracts in the shape of the notes which do not contain any conditions. I will see that you get the machine at once and on receipt of Inv. and B/L, you will remit check to cover $104.00 note and the other one, $130.00 when due. Thanking you for a prompt reply and also if you will write me at Houston, as well as here, a short note, I beg to remain, etc."

Again on May 9, 1912, he wrote:

"I failed to hear from you at Houston. I hope if you have not replied fully to my last you will do so at once. I am trying to help you out to get the machine and to get the latest improvements. It certainly now appears about perfect. Please write me at once. State if machine was shipped. If not, will see that it is at once."

There are two other letters, the dates of which are not given, in which he is insisting upon an answer to his letters and upon the payment of the note, and in one he states that:

"I will try to see that you get the machine at once. This beats courts. Do not desire to be harsh and I am sure you desire to do the right thing."

The appellee further testified that the machine was to have been shipped February, 1912, but was not shipped until June 3, 1912.

"I tried to use it in my cotton field and it was no account at all. It did not do the work. I tried two half days to use the chopper and it would not do the work. I set it aside. I notified the Union Supply Company, which had succeeded the Weisenborn Manufacturing Company, that the machine would not do the work and I did not want it. I never heard from them. I received the letters from Russ Daniel, the plaintiff in this case, before I received the machine. * * * The machine would not do the work Weisenborn said it would."

At this point appellant introduced a letter from appellee to Russ Daniel, to his address at Terry, Tex., dated, March 27, 1912, in which appellee acknowledged the receipt of Daniel's letter, and appellee says therein, "and here is your reply concerning the note due and transferred to you." He further says he does not know a thing about it. Can't read the letter (appellant's), and promises to tell more about it upon hearing further from Daniel. The letter is almost unintelligible.

Geo. Spaeth testified that he saw the machine work; that it was not satisfactory. "It would hit a few licks, then skip, and I did not consider that it did satisfactory work." Mrs. Albert Spaeth testified her husband tried the machine twice in the field, "and it was not satisfactory to me. It did not chop to suit. It did work in an unsatisfactory manner."

The appellant testified G. P. A. Weisenborn was indebted to him in the sum of $500 for money loaned him by appellant, which sum was due January 2, 1912. At the time of the loan, Weisenborn, to secure the payment of the $500, delivered $1,000 of the stock of the Weisenborn Manufacturing Company as collateral. At the time of taking the stock, appellant testified he thought the company solvent; that the last of December, 1911, or the first of January, 1912, he became convinced that the stock was of but little value. He then began pressing Weisenborn for payment of his $500, and was informed by him that the only way Weisenborn could pay was to transfer the note in question and some others, and shortly thereafter did transfer the note to appellant. The note was not then due, and he then had no notice of any fraud, wrong, or failure of consideration in its execution and did not know there was any defense to the note at the time he took it and did not know there was any unfulfilled contract between appellee and the manufacturing company. There was nothing on the face of the note to evidence its consideration, but it was a plain, promissory note. At the time he purchased the note there was a letter from a bank in Gainesville attached to the note that Spaeth was perfectly good for his obligations and that he accepted the note as money and considered it as that much money; that he did

not have and had never had any interest in the manufacturing company or connection with it.

On cross-examination he testified he thought the stock was worth the money when he obtained it and that Weisenborn was good when he loaned the $500. The loan was made September 18, 1911, and Weisenborn showed him a statement which placed his assets at about $20,000. At that time the manufacturing company was engaged in manufacturing wire fence, picket fence, and fencing machines, and was not then manufacturing cotton choppers. He gave the check to Weisenborn for the $500, on the American National Bank, Beaumont, Tex., which was dated September 18, 1911. He gave the names and amount of other notes by other parties turned over to him by Weisenborn at the time he procured the notes in suit.

"At the time these notes were transferred to me I might have known they were given in payment for cotton chopping machines and the right to sell them in the counties in which the parties lived, but I did not know there was any defect in said choppers or that the contract for their delivery was unfulfilled. I subsequently learned that Weisenborn was selling a patent cotton chopper. I have not collected any of these notes but am trying to do so and brought suit to collect this one."

He further testified that all he could collect on his $500 was the notes transferred to him. He testified that he was then in the lumber business and had been for about a year at the town of Terry, and that, when he took the $1,000 stock to secure the $500, he thought it would make the loan safe. He testified that he first thought he got the note in question the latter part of December, 1911, but that upon looking over the correspondence he knew he got the notes not later than the latter part of March, 1912.

The trial court, after instructing the jury to find for the plaintiff the amount of the note, interest, and attorneys' fees, unless under subsequent instructions they should find for defendant, gave the following:

"If you find from the evidence that the plaintiff took the note in controversy before its maturity for a valuable consideration, but at the time of taking said note he had knowledge of the equities and defenses set up by the defendant and that the said note was given for the purchase of the machine called a cotton chopper, and that said machine was worthless for the purpose of chopping cotton and of no value to the defendant, then, in that event, you will find for the defendant."

The jury returned the following verdict:

"We, the jury, find for the defendant on the grounds that we failed to find that plaintiff, at the time he took the note, gave any valuable consideration for same; said plaintiff considering his claim against the said company at the time worthless."

[1-4] The appellant assigns error in refusing his specially requested charge directing a verdict for the plaintiff, and in giving the charge above set out by the court, and in overruling his motion for a new trial, because of the insufficiency of the testimony.

Appellant asserts that the evidence shows that he was the purchaser of the note in due course of trade before maturity for a valuable consideration, without notice of appellee's alleged equities. The note in this case is negotiable and was indorsed in blank by the payee therein. The presumption of law is that it was so indorsed and transferred before maturity. The facts are uncontroverted that appellant was in possession of this note so indorsed before its maturity. The letters of both appellant and appellee evidence that fact. The uncontradicted testimony of appellant is that he took this note in part payment of an indebtedness of $500 due him by Weisenborn. Indebtedness is recognized by our courts as being a sufficient consideration for the transfer of a note, and such transfer would be in due course of trade. Blum v. Loggins, 53 Tex. 136; Liddell v. Crain, 53 Tex. 549; Kauffman v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Greneaux v. Wheeler, 6 Tex. 526. So if it was taken as collateral security to a preexisting debt, or for a concurrent obligation, it would be upon a valuable consideration in due course of trade. Authorities supra; Lane v. Bank, 155 S. W. 307. The jury recite in their verdict that they find for the defendant on the ground that plaintiff did not give "any valuable consideration therefor." This finding is against the presumption of law, as well as against the uncontroverted testimony in this case. They appear to have based such finding on the ground that appellant considered "his claim against said company at the time worthless." It may be that appellant had lost hope of collecting his debt, but it was nevertheless a debt which he had a right to collect and furnished in law a valuable consideration for the note. The fact that he regarded the debt worthless did not render taking the note out of the due course of business. The evidence in this case shows simply a failure of consideration for the note, if indeed it is sufficient for that purpose. The rule in such case is that the appellant Daniel suing his assignee under a written endorsement, purporting to have been executed prior to maturity of the note, is presumed to have paid a valuable consideration and bought without notice of the defense set up by defendant, and the burden rested upon the latter to show that Daniel did not pay valuable consideration for the note, or if he did, that he had notice of the defense interposed by the defendant. Mulberger v. Morgan, 47 S. W. 379; Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632; Rische v. Bank, 84 Tex. 413, 19 S. W. 610; McAlpine v. Finch, 18 Tex. 831; Daniel, Neg. Inst. (5th Ed.) § 814.

[5] If the note was obtained from the maker by fraud or upon illegal consideration, the burden is on the maker to show such fraud or illegality, and, when that is shown, the

burden is shifted to the assignee to show that he paid value before maturity, and when the assignee shows such a purchase the burden is then on the maker to show at the time the assignee purchased that he then had notice of such fraud or illegality. Hart v. West, 91 Tex. 184, 42 S. W. 544; Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721 and 996; Hillebrandt v. Ashworth, 18 Tex. 307; Daniel, Neg. Inst. (5th Ed.) §§ 819, and 848.

[6-8] If the allegation that the note was obtained through fraudulent representation be sufficient to bring the note within the rule that refers to fraud and illegality in obtaining and placing in circulation the note, the evidence in this case falls short of the requirement. The evidence does not show any representation made as to the machine, but at most it shows that the machine proved worthless on trial. The consideration for the transfer of the note is presumed, and the proof, we think, establishes the fact that it was obtained before maturity and in due course of trade as that term is defined and understood by our courts, and upon a valuable consideration. The only question therefore is: Did appellant, at the time of coming into possession of the note, have notice that there was a failure of consideration therefor? The note suggests on its face nothing that would put a party upon notice that there was no consideration for it. It is a plain negotiable note, properly indorsed by the company, and was so indorsed when it came into the hands of appellant. Appellee argues because appellant, after obtaining possession of the note, wrote that the note was signed unconditionally and that he required payment of it as an innocent purchaser, and further that he understood appellee did not dispute the note; and that the company was to ship a machine, which it had not done, and that he was trying to help appellee to get the machine, and get the latest improvements on the machine and further that he would see that it was shipped; and appellee further contends that because of the testimony of appellant that he might have known the note was given in payment for a cotton chopping machine and for the right to sell, was sufficient notice to appellant of the appellee's defense. We do not see how any of these facts charged appellant with notice that the consideration for the note had failed. If he knew the note was given for the machine, it does not show that appellee would find the sample worthless upon receiving it. The notice must have been received at the time appellant came into possession of the note. The burden was on appellee to show such notice. This we do not think he has done. Mr. Daniel gives the rule in section 796, which appears to be in accord with the authorities in this state and others:

"That the circumstances must be so pointed and emphatic as to amount to proof of mala fides in the absence of inquiry or such as to

168 S.W.—33

be prima facie inconsistent with any other view than that there is something wrong in the title and thus amount to constructive notice; in other words, we would say that, if the circumstances are of such a character as to create such a distinct and legal presumption and prima facie proof of fraud or some equity between prior parties, it would operate as legal information, as constructive notice to the transferee."

Such is substantially the rule announced by the Missouri Supreme Court in Horton v. Bayne, 52 Mo. 533. The rule stated by Storey is criticised by Daniel. The rule as given by Storey is quoted in Greneaux v. Wheeler, 6 Tex. 526, but Daniel suggests that that case "follows it as adopting the very contrary precedent." We think that case more nearly follows the rule given by Daniel, and subsequent cases in this state appear to have so understood. Greneaux v. Wheeler, supra; Mulberger v. Morgan, 47 S. W. 379, 738; Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908, and others. The ordinary rule of constructive notice which applies to the purchase of property in general is not applicable in the case of negotiable instruments. There is, we think, nothing in this record which would have charged appellant with bad faith when he took the note as part payment of his indebtedness. Again, a machine had not been delivered at the time appellant purchased the note. Appellee at that time did not know the machine was worthless. He testified that it was to have been delivered to him in February, 1912, and that it was not delivered until June of that year. The contract which he signed stipulated it should be shipped "whenever he may order one sample machine." The evidence does not show when he ordered it. If it can be considered that he ordered it for February, 1912, there is not a fact showing appellant knew that at the time he purchased the note, when the machine was to be shipped, or that it in fact had not been shipped. All the knowledge he had upon the question appears to have been obtained after he purchased the note. His rights are to be determined by what they were when he purchased the note. In the case of Rische v. Planters, 84 Tex. 413, 19 S. W. 610, the Supreme Court held substantially that the assignee could not be affected by facts which occurred subsequent to his purchase. Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 976; Lock v. Citizens' National Bank, 165 S. W. 538; Rohde v. Lafayette Lodge, 15 Tex. 449; Gosling v. Griffin, 85 Tenn. 737, 3 S. W. 642; Trigg v. Saxon, 37 S. W. 567. We think the court was in error in refusing to instruct a verdict for appellant and in submitting the issue to the jury. We believe the appellant should have judgment for the principal, interest, and attorneys' fees due on the note. The judgment of the trial court will be reversed and here rendered for appellant for the amount sued for.

Reversed and rendered.