FORSTER v. ENID, O. & W. R. CO. et al.†
(No. 758.)

(Court of Civil Appeals of Texas. Amarillo. April 3, 1915. Rehearing Denied May 8, 1915.)

1. BILLS AND NOTES ⬥485—ASSIGNMENTS—GENUINENESS—PLEADING.

Under Rev. St. 1911, art. 588, providing that, unless defendant denies by his sworn plea the genuineness of an assignment of the instrument, a maker of a note payable to a corporation and bearing an indorsement in the name of the corporation by its vice president and assistant treasurer cannot impeach the assignment without filing a sworn plea and affidavit.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1542–1554; Dec. Dig. ⬥ 485.]

2. BILLS AND NOTES ⬥485—ACTIONS—GOOD-FAITH HOLDER—PLEADINGS.

A sworn plea is not necessary to raise the issue of good faith of the holder of a note, holding under an indorsement.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1542–1554; Dec. Dig. ⬥ 485.]

3. CORPORATIONS ⬥384—TRANSFERS OF OBLIGATIONS—SEAL.

The seal of a corporation is not necessary to a valid transfer of a note payable to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1801; Dec. Dig. ⬥384.]

4. BILLS AND NOTES ⬥363—BONA FIDE PURCHASER.

A purchaser of a negotiable note is not subject to the ordinary rules of constructive notice applying to a purchaser of property in general, and, where he has acted in good faith and has paid a valuable consideration, his title cannot be attacked, and the acquisition of a note under circumstances tending to put a reasonable man on inquiry is merely evidence of bad faith.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 790, 791, 960, 962; Dec. Dig. ⬥363.]

5. BILLS AND NOTES ⬥537—BONA FIDE HOLDER—QUESTION OF FACT.

Whether a purchaser of a negotiable note acquired it in good faith is a question of fact.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. ⬥ 537.]

6. BILLS AND NOTES ⬥343—BONA FIDE HOLDER—NOTICE.

A bank purchasing a note before maturity with mere knowledge that the consideration therefor was stock to be thereafter issued by a railroad corporation and the completion by it of a railroad then in course of construction is a purchaser in good faith.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 853–855, 864, 865; Dec. Dig. ⬥343.]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by J. E. Forster against the Enid, Ochiltree & Western Railroad Company and others, in which defendant the First National Bank of Henry, Ill., filed a cross-action. From a judgment for the bank, plaintiff appeals. Affirmed.

Crudgington & Works, of Amarillo, for appellant. W. W. Moore, of Houston, J. Y. Powell, of Dalhart, and A. A. Lumpkin and Del W. Harrington, both of Amarillo, for appellee First Nat. Bank of Henry, Ill.

HALL, J. Appellant sued appellee railway company, S. J. Allen, trustee, H. G. Hendricks, receiver, and the First National Bank of Henry, Ill., to cancel his negotiable promissory note and deed of trust upon certain real estate securing the same, alleging, in substance, that the note was given for stock in the Enid, Ochiltree & Western Railroad Company, and in consideration of the agreement of said company to build a line of railroad near appellant's property; that he subscribed for five shares at $100 each, and, having paid $75, instituted this suit to cancel the balance. The subscription contract showed that the capital stock of said railway company should be $500,000; that the line should connect the Santa Fé Railway on the east with the Denver or Rock Island on the west by way of Ochiltree; that the consideration for said note had failed, in that no stock was issued to appellant, and no road was ever built; that only about $333,000 of said stock was subscribed, and the route of said road changed without his consent from Dalhart to Ochiltree only; that he was induced to change his liability upon the subscription contract to the negotiable note in question by the fraudulent representations of said railroad company's agents to the effect that funds had already been secured with which to build said road, and that the company was in good financial condition, all of which statements were untrue; that the promoters of said road conspired and confederated with Charles R. Jones, the president of the First National Bank of Henry, Ill., to secure the note in suit and a large amount of similar paper on the wreck of said railroad venture, they knowing that the company was without sufficient backing to complete the road. As a part of said scheme, said Jones acquired a $28,000 note for $25,000, to which was attached $40,000 worth of collateral notes, similar to the one in suit, and a section and a quarter of land; that said company became insolvent, and was on April 6, 1911, placed in the hands of a receiver, and all of its assets sold, said company being unable to complete the construction of the road; that said bank procured the note in suit without indorsement and with full notice of said defenses.

The appellee bank replied by plea of estoppel, on the ground of appellant's being a subscriber to stock in said company, and by

general denial. By cross-action the bank prayed for judgment on the note with foreclosure of the lien, alleging that it was a bona fide purchaser for value thereof. Appellee railroad company, by its president, adopted the bank's pleadings.

From a judgment in favor of the bank for the full amount of the note and foreclosing the lien against appellant's land, the controversy is brought here by appeal.

The principal facts are as follows: Appellant subscribed for five shares of the capital stock of appellee railway company, paying $75 in cash, executing his note for the balance. The subscription contract provides that all subscribers should, when called upon, give good and sufficient security for the deferred payments due upon subscription. The uncontroverted evidence is that the note in question was purchased by appellee bank in due course of trade for a valuable consideration, before maturity, without notice of any defense thereto or defect therein, unless such notice was conveyed by the fact that it was part of an executory contract for stock or by the alleged illegal indorsement thereof by the vice president. The indorsement is as follows: "Enid, Ochiltree & Western Railroad Company, by A. E. Wiest, Jr., Vice President. W. T. Wheatley, Asst. Treasurer." The evidence established the fact of the insolvency of the road, appointment of a receiver, and a sale of its properties, after the execution of the note.

[1] Appellee challenges the right of appellant to attack or in any way question the validity of the assignment, because appellant did not, by his sworn plea, under article 588, R. S. 1911, deny the genuineness of the assignment and file with the papers in the case an affidavit stating that he had good reason to believe, and verily did believe, the assignment or indorsement to be a forgery. It will be observed that appellant sought, not only to negative the genuineness of the assignment by the railway company by attacking the indorsement of the vice president, and his authority to so transfer it, but he endeavored also to prove that the bank took the note with such notice of its infirmity as would impeach its good faith. Before the validity of the assignment could be attacked it was, under the decisions, necessary for appellant to file a sworn plea under the article above mentioned. The Supreme Court, in Schauer et al. v. Beitel's Executors, 92 Tex. 601, 50 S. W. 931, said:

"The proceeding by which the title of an assignee or indorser may be put in issue by the maker when sued upon a written instrument is prescribed in the following article of the Revised Statutes: [Quoting the article above.] * * * The answer of Schauer, upon which this case was tried, did not contain an allegation that either of the assignments upon the note sued on was not genuine, nor does the affidavit which was filed with that answer state that the affiant 'has good cause to believe, and verily does believe that such assignments are forged.' In the state of the pleading the written transfers upon the note fully establish the title to it in

the plaintiff and his right to recover thereon. Grounds v. Sloane, 73 Tex. 662, 11 S. W. 898. In the case cited Judge Henry, for the court, said: 'Clearly this statute intends to give an assignee of a written instrument the right to recover upon it without other proof than the production of the indorsed instrument unless its genuineness is denied specially in the answer, supported by an affidavit. Without such plea and affidavit, evidence contesting the validity of the assignment should not be heard. Even if evidence to the effect that the assignment for any cause is invalid or incomplete should be admitted in the absence of the plea required by the statute, it would go for nothing. A valid judgment cannot be rendered on evidence unsupported by a proper pleading. Without the prescribed plea the language of the statute is that the assignment 'shall be regarded as fully proved.' This includes delivery and everything else required to give the assignment legal effect. The statute would be of very little value to the assignee if it left it necessary for him to bring proof of the actual delivery of the assigned instrument, or left that fact open to attack under a general denial.'" Parker v. American Exchange Bank, 27 S. W. 1073.

In the absence of a sworn plea, we must presume not only that Wiest, as vice president, had full authority to make the transfer of the note, but every other fact in favor of the legality of the assignment.

[2-4] The remaining question of importance is: Did the bank acquire the note in good faith so as to preclude appellant from urging the defenses of fraud and failure of consideration? A sworn plea is not necessary in order to raise the issue of good faith. Mayfield Grocery Co. v. Andrew Price Co., 43 Tex. Civ. App. 391, 95 S. W. 31; Handley v. Bank of Canyon, 149 S. W. 742; Smith v. Cooley, 164 S. W. 1051. The seal of the corporation was not necessary to a valid transfer. Hall & Tyson v. Bank, 53 Tex. Civ. App. 101, 115 S. W. 293. The purchaser of a negotiable note is not subject to the ordinary rules of constructive notice which apply to the purchaser of property in general. If he has acted in good faith and paid a valuable consideration therefor, his title cannot be impugned; the acquisition of the note, under circumstances tending to put a reasonable man on inquiry, merely being evidence tending to show bad faith. First National Bank of Aubrey v. Chapman, 164 S. W. 900; Wilson v. Denton, 82 Tex. 535, 18 S. W. 620, 27 Am. St. Rep. 908.

"It is a general principle, running throughout all branches and subjects of the law, that one will be charged with notice of a fact who has information which should have put him upon inquiry if by following up such information with diligence and understanding the truth could have been ascertained. Whether this principle is to be applied in respect to one who becomes possessed of negotiable paper has been the subject of some discussion. At one time it seems to have been agreed on all sides that actual knowledge on the part of the purchaser was not undisputable, but that it would be sufficient if the circumstances were of such a strong and pointed character as necessarily to cast a shade upon the transaction and to put the holder upon inquiry. It is now well settled, however, that the doctrine of notice as it affects the good faith of transactions generally does not apply to negotiable instruments." 3 R. C. L. p. 1071, § 277.

"At one time it seems to have been the pre-

vailing view that where a party was about to receive a bill or note, if there were any such suspicious circumstances accompanying the transaction or within the knowledge of the party as would induce a prudent man to inquire into the title of the holder of the consideration of the paper, he would be bound to make such inquiry; or, if he neglected to do so, he should hold the bill or note subject to any equities which might exist between the previous parties to it. Negligence or diligence according to usual standards of character was made the criterion for determining whether he was chargeable with notice, but the prevailing view for many years has been to the effect that mere ground of suspicion, as to the existence of defenses to the instrument, is not equivalent to knowledge thereof by the purchaser." Id. § 278.

[5] The question of good faith is a question of fact. In the absence of a jury, the trial court, in determining the facts, has settled the question against appellant.

[6] Appellant insists that because the bank purchased the note with knowledge that the consideration therefor was stock to be thereafter issued, and the completion of a railroad then in course of construction, it cannot be held to be a purchaser in good faith.

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee which has not been performed will not deprive the indorsee of the character of a holder in due course unless he has notice of the breach of that agreement or contract. So knowledge of a warranty on a sale in which a note was given is held not to affect the rights of a purchaser of the note for value before maturity if he had no knowledge of the breach of the warranty. A recital in the instrument respecting such agreement or warranty is not sufficient of itself to advise him that there was or would necessarily be a failure of consideration. The presumption of law would be that the contract would be carried out in good faith and the consideration performed as stipulated." 3 R. C. L. p. 1067, § 273.

The remaining assignments are overruled, and the judgment affirmed.

HENDRICKS, J., not sitting.