### HARTY v. KEOKUK SAV. BANK.
#### (No. 7506.)

(Court of Civil Appeals of Texas.  Galveston. Jan. 29, 1918.  On Motion for Rehearing, Feb. 14, 1918.)

1. BILLS AND NOTES ⬷343—INNOCENT PURCHASER.

If the purchaser of a note, who had knowledge that it had been given for machinery, title to which was to remain in payee, also knew or was charged with notice that the machinery had been warranted and might wholly fail to meet warranties, he could not become an innocent purchaser.

2. BILLS AND NOTES ⬷525—INNOCENT PURCHASER—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to show that plaintiff purchaser of note knew, or was charged with notice, that dredge, for which note was given, had been warranted and might fail to meet warranties.

3. BILLS AND NOTES ⬷342—FAILURE OF CONSIDERATION—EVIDENCE.

That note stated that it was part of purchase money for a dredge, title to which was to remain in payee, would not be notice to purchaser that consideration had or would fail, where dredge was not delivered until four months later.

4. BILLS AND NOTES ⬷497(2)—INNOCENT PURCHASER—BURDEN OF PROOF.

Although note stated that it was part of purchase money for a dredge, title to which was to remain in payee, the burden was on defendant to show some additional fact requiring purchaser to anticipate probable failure of dredge.

5. BILLS AND NOTES ⬷489(7)—VARIANCE.

That petition described note as payable to iron works company and note introduced in evidence was payable to iron works did not constitute a variance, where the parties concerned used the names interchangeably.

Appeal from District Court, Matagorda County ; Sam'l J. Styles, Judge.

Suit by the Keokuk Savings Bank against A. J. Harty.  Judgment for plaintiff, and deferdant appeals.  Affirmed.

Gaines & Corbett, of Bay City, for appellant.  R. R. Lewis and J. W. Conger, both of Bay City, for appellee.

GRAVES, J.  The Keokuk Savings Bank sued A. J. Harty on a note alleged to have been executed on November 2, 1912, payable to Scott-Madden Iron Works, or order, four months after date, for the sum of $3,-275, the note reciting on its face that it was in part payment of the purchase money for a certain gasoline dredge, and that the title to the property was to remain in the Scott-Madden Iron Works until the full amount of the purchase money was paid. It was further alleged that on November 15, 1912, the Scott-Madden Iron Works, for a valuable consideration, in due course of trade, and before its maturity, transferred and assigned this note to the bank.  A credit of $1,600 was acknowledged, and judgment was asked for the balance due upon the note, including interest and attorney's fees.  Harty, in defense, charged that the bank had not acquired the note before maturity, and was not an innocent purchaser thereof for value, but had entered into a conspiracy with the Scott-Madden Iron Works Company to ·defraud him, in this: That the dredge, for part of the purchase money on which the note was given, had been originally sold to him by the W. E. Austin Machinery Company upon agreed specifications, and under both express and implied warranties that it would be suitable for and adequate to the purposes and uses therein provided for, all of which obligations had afterwards been assumed by the Scott-Madden Iron Works Company, whereas the machinery as finally delivered to him by the latter company was not the thing agreed upon, would not do what it was sold for, and was unfit for any purpose; that the bank, well knowing these alleged facts, and though not the purchaser for value and before maturity of the note sued upon, pretended to be such in furtherance of the plan agreed upon between it and the iron works company to wrong and defraud Harty.  Other defensive matters not deemed necessary to recite were also interposed.  The bank in reply denied knowledge of any contract between Harty and the Austin Machinery Company, or the Scott-Madden Iron Works Company, and reiterated its averment that it bought the note for cash on November 15, 1912, without knowledge or notice of any defenses against it.  The trial being before a jury, at the close of the evidence the court peremptorily instructed them to find for the bank the balance then due on the note, which being done, judgment in its favor against Harty was accordingly entered, and the latter has appealed.  This action followed from the court's conclusion that

the bank was shown to be an innocent purchaser of the note for value without notice of any defenses appellant may have had against it.

[1] We think the main question upon this appeal, presented in differing forms through the first four assignments of appellant, is substantially this: Did the bank at the time it acquired the note sued upon know, not only that the note had been given in part payment for machinery, the title to which was to remain in the payee therein named until fully paid for, but also, either actually or through notice with which it was charged, that this machinery had been sold and warranted to the maker of the note to fill certain agreed requirements, and that it had or might wholly fail to meet them? If the bank did then have such knowledge, or was charged with notice of such supposed facts, we are inclined to agree with appellant that it neither was nor could have been an innocent purchaser of the note, and, further, that if the evidence raised that issue, the court erred in excluding the testimony tendered by him in proof of such contract, warranties, and failure of the dredge delivered to meet them, and in peremptorily directing a verdict against him.

In the statements subjoined to the assignments now under consideration, it is shown that appellant offered testimony tending to prove that the W. E. Austin Machinery Company originally, and the Scott-Madden Iron Works Company as successor to the obligation, had contracted to sell him the gasoline dredge, for which the note here involved was given the latter company in part payment, under lengthy specifications and warranties as to how it was to be constructed, and what it was to be capable of doing, and that when finally delivered to him about March 1, 1913, it not only failed to meet these warranties, but was worth nothing except as junk. This proffered testimony was excluded by the court.

[2] After a close consideration of the record, while the question is not free from doubt, we conclude that the trial court did not err in holding that no such knowledge or notice on the part of the bank was shown. The only attempt to do so was in offering the above-mentioned recitations in the face of the note, and the statement from the deposition of Mr. Scott, president of the iron works company, that he felt sure he had attached the contract concerning the dredge between his company and Mr. Harty to the note when he sold it to the bank. On cross-examination, however, Mr. Scott further said he was doubtful about the matter and was unwilling to swear that he had so attached the contract. We do not think this uncertain and wavering suggestion raised the issue of the bank's knowledge of the contract, especially when its officials positively testified that they had never seen or known about any such contract or warranties with any

one relating to the machinery mentioned in the note, but had bought and paid full face value for it in cash on the day of the purchase, November 15, 1912, after investigating and satisfying themselves of Mr Harty's responsibility. Mr. Scott himself corroborated them in all these statements, except in the one particular above indicated, and there is nowhere in the record any testimony to the contrary; in other words, so far as the testimony of the witnesses is concerned, the proof is undisputed that the bank was the kind of purchaser it claimed to be.

We have also searched the record in vain for any evidence of a conspiracy, agreement, or understanding between the bank and representatives of the iron works company by which judgment against Harty on the note was to be fraudulently obtained in the name of the bank as its pretended owner.

[3] This, then, left the question as to notice to the bank dependent upon the recitals in the note itself, which were as follows:

"Four months after date I promise to pay to Scott-Madden Iron Works or order thirty-two hundred & seventy-five dollars, in New York Exchange at par for value received, being part of purchase money for gasoline dredge," etc.

"It is understood and agreed that the title to the above-described property is to remain in the said Scott-Madden Iron Works until the full amount of purchase money is paid."

[4] But surely these facts did not, on November 15, 1912, affect the bank with notice that the consideration for the note either had or would fail; because the undisputed evidence further shows that, while it acquired the note on that date, the dredge was not delivered to appellant until about March, 1913, prior to such delivery, as he himself testified, he neither did nor could have known that it would fail to meet the warranties in the contract. And certainly mere knowledge back on November 15, 1912, that the note had, on March 2, 1912, been given for a gasoline dredge did not even tend to indicate that, when delivered nearly four months later, the dredge would prove worthless. The burden was upon appellant to show some additional fact bringing such actual notice home to appellee, and requiring it to anticipate the probable failure of the dredge. As already indicated, we do not think this was done. Daniels v. Spaeth, 168 S. W. 509; Foster v. Enid, O. & W. Ry. Co., 176 S. W. 788; Herman v. Gunter, 83 Tex. 67, 18 S. W. 428, 29 Am. St. Rep. 632; Rische v. Planters, 84 Tex. 413, 19 S. W. 610; Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996; Lock v. Citizens' National Bank, 165 S. W. 538.

From these conclusions it results that, in our opinion, the court did not err in excluding the testimony tendered for the purpose of showing failure of consideration as against the bank, nor in holding it entitled to protection as an innocent purchaser. The first four assignments are therefore overruled.

[5] Under assignments 6 to 10, inclusive, and 12, appellant, from different viewpoints,

insists that there was a material variance between the note declared upon and that offered in evidence, in that the pleading described the note as payable to the Scott-Madden Iron Works Company and so indorsed, whereas the note offered in evidence was payable to the Scott-Madden Iron Works and indorsed by the Scott-Madden Iron Works Company, with no proof that the iron works and the iron works company constituted the same entity or individual. We think these contentions hypercritical· and devoid of merit. It is true that the note was pleaded and appeared in proof in the manner alleged in these assignments, yet the entire record shows that all parties concerned, including appellant himself, used the names Scott-Madden Iron Works and Scott-Madden Iron Works Company interchangeably as meaning and designating a corporation bearing the name as last stated. Under the proof offered, there neither was nòr could have been any question that they were one and the same concern; that the note sued upon and offered in evidence by the bank was the identical one executed by the appellant for the benefit of the Scott-Madden Iron Works Company and transferred by it to the bank. Mr. Scott, president of the company, so testified, and appellant in paragraph 2 of his third amended original answer so averred in the following language:

"That the W. E. Austin Machinery Company transferred the said contract and agreement to Scott-Madden Iron Works Company, and that the note sued upon herein was given to the latter company by this defendant, changing the name of the corporation to whom he executed the note to that of the Scott-Madden Iron Works."

The grouped assignments touching this question are accordingly overruled.

There are several further assignments, suggesting that the court erred in receiving the instructed verdict of the jury and in entering judgment thereon, but, after considering them, we think no error is pointed out, and they are overruled without further discussion.

It has been ordered that the judgment of the court below be in all things affirmed.

Affirmed.

### On Motion for Rehearing.

In the motion for rehearing, attention is ·called to the fact that on page 5 of the original opinion the date of the note in suit is given as March 2, 1912. This is a typographical error, and should be November 2, 1912, as correctly appears at the beginning of the opinion.

Criticism is also made of our statement in the former opinion that assignments 7, 8, and 9, along with others named, presented the question of variance between the note sued ·upon and that offered in evidence in reference to the identity of the iron works and the iron works company. Appellant now points out that these three particular assignments were not intended to and do not raise the question of identity as stated, but whether the savings bank acquired or owned the note on November 15, 1912, as is claimed. The point is well taken, and we hasten to acknowledge the inadvertence and make the correction.

But this mere erroneous grouping of some of· the assignments relating to it does not mean that the question as to the ownership of the note on the date fhe bank claimed to have acquired it did not receive our careful consideration, or that it was left undetermined. Upon the contrary, it was an inherent part of appellant's chief defense that the bank was not an innocent purchaser of the note for value before maturity without notice of his alleged defenses against it, and was necessarily determined adversely to his contention in our former conclusion that the trial court did not err in holding the bank to be such innocent purchaser. If, however, it may even technically appear that the three assignments under consideration were not specifically overruled, that is here done, and the motion for rehearing overruled.

Overruled.