## J. O. & J. A. WILSON V. K. T. DENTON ET AL.

### No. 3151.

1. **Negotiable Note—Purchaser.** —As promotive of the circulation of commercial paper it has been the rule of decision of our courts that the possession of the instrument acquired in good faith in the usual course of trade gives property, whether the person from whom received have title or not.

2. **Same—Statute Construed.**—Article 265 of the Revised Statutes, omitting the words "in the usual course of trade," can not affect the sale; for it would be admissible always to establish mala fides by circumstantial evidence, and the manner in which the title should be acquired would be a subject of inquiry as tending to establish the main fact of good or bad faith.

3. **Valuable Consideration.**—A promissory note given by the purchaser of such paper would be a payment. Inadequacy in price, however, would be a circumstance on the issue of good faith.

4. **Fact Case.**—See facts held sufficient to establish a purchase in good faith from one not the owner.

APPEAL from Hopkins. Tried below before Hon. E. W. TERHUNE. The opinion states the case.

*J. A. B. Putman* and *Peteet & Crosby,* for appellants.—1. Where a person purchases a negotiable promissory note, payable to party other than the seller of the same, and pays therefor with his own unsecured promissory note, payable to some person other than such seller, and not connected in any way with the transaction, such purchase is not in the usual course of business. 1 Pars. on Notes and Bills, p. 256; Roberts v. Hall, 37 Conn., 205; Same Case, 9 Am. Rep., 309; Cornell v. Cornell, 75 N. Y., 91; Elias v. Finnegan, 33 N. W. Rep., 330; Francis v. Joseph, 3 Edw. Ch., 182.

2. If Cotter & McMullan had notice of the defect of title of K. T. Denton to the notes, or if they had notice of facts such as would arouse or excite the suspicion of a prudent man and put him upon inquiry as to the title of said notes, and which inquiry, if followed out, would lead to the discovery of the defect in the title to the notes, that would be sufficient notice to defeat intervenors' title to the notes. Davis v.

Gray, 61 Texas, 506; Mills v. Howeth, 19 Texas, 257; Humphries v. Freeman, 22 Texas, 45; 1 Dan. on Neg. Inst., secs. 795, 796, 799, 801.

3.   If the circumstances surrounding the transaction between intervenors and K. T. Denton before and at time of the sale and purchase of the Wilson notes were such as to arouse the suspicions of intervenors and put them upon inquiry as to Denton's title to said notes, which inquiry, if followed out, would have shown a defect of title in Denton to the notes, then intervenors would not be innocent purchasers without notice.   Davis v. Gray, 61 Texas, 506; Mills v. Howeth, 19 Texas, 257; Humphries v. Freeman, 22 Texas, 45; 1 Dan. on Neg. Inst., secs. 795, 796, 799, 801.

*Leach & Templeton*, for appellees.— 1.   Where a note payable to bearer is actually delivered by the holder before maturity into the hands of the purchaser, without notice of any defect in the title or consideration, and for a fair and valuable consideration, it is in due course of trade.   Greneaux v. Wheeler, 6 Texas, 527; 2 Rand. Com. Paper, secs. 479, 988; 1 Dan. Neg. Inst., sec. 780.

2.   The exchange of promissory notes is in the usual course of trade, and the giving of one note for another is a valuable consideration.   2 Rand. Com. Paper, sec. 479.

3.   A consideration is fair if it approximates in value the value of the article purchased.   Nor is it necessary in order to protect the purchaser of a negotiable promissory note before its maturity that the purchase should be in the usual course of trade.   Rev. Stats., art. 265.

4.   The holder of a promissory note payable to bearer is presumed to be the owner thereof, and proof that his vendor had no title is not sufficient to render void his title.   It must be shown that he had actual notice of the want of title in his vendor, or the existence of facts such as would show that he acted in bad faith or was guilty of gross negligence in making the purchase must be established.   Greneaux v. Wheeler, 6 Texas, 527; Kaufman v. Robey, 60 Texas, 310; Banking and Ins. Co. v. Turnley, 61 Texas, 365; Wilson v. Wall, 6 Wall., 91; Swift v. Smith, 102 U. S., 442; Murray v. Lardner, 2 Wall., 110; 2 Rand. Com. Paper, sec. 1001; 1 Dan. Neg. Inst., secs. 777, 779, 795, 796.

GARRETT, PRESIDING JUDGE, *Section B.*—Suit by the appellants, J. O. & J. A. Wilson, against K. T. Denton and others to recover the possession of two promissory notes.   The notes were in the possession of the City National Bank of Sulphur Springs, a defendant in the suit, which had them for collection.   Cotter & McMullan, also appellees, intervened in the suit and claimed to own the notes, and asked for judgment for possession thereof.   The notes were payable to plaintiffs J. O. & J. A. Wilson, or bearer, and were executed by J. H. McClimons, who was also a party defendant.   They were for $1000 each, dated the

same day, August 5, 1889, due at twelve months and two years respectively, with semi-annual interest at the rate of 12 per cent per annum, and were secured by mechanic's lien on a building erected for McClimons by plaintiffs. There was a prior lien on the building for $1000. The building was worth about $6000.

Denton had been intrusted with the possession of the notes by the plaintiffs in order to sell them to one Womack. He did not do this, but on February 1, 1890, sold them to Cotter & McMullan in consideration of their two notes to Denton's wife for $900 each, bearing 12 per cent interest, due in four and sixteen months after date, and his account with them for $36.

Trial was had before the court without a jury, and judgment was rendered in favor of the intervenors Cotter & McMullan. Plaintiffs have perfected their appeal to the Supreme Court, and have properly assigned errors, for which it is sought to reverse the judgment of the court below.

Without undertaking to take up and dispose of the several assignments of error in their order, we shall dispose of the questions presented by them as they arise in a general consideration of the case.

Plaintiffs were brickmasons and contractors, and the defendant Denton was a carpenter and contractor, living in Sulphur Springs. They were intimate friends, and stood well and were regarded as solvent in the community. They were not partners in business, but when plaintiffs, who were partners, obtained a contract for a building they usually sublet the wood work to Denton, and when he obtained the contract he would sublet the brick work to plaintiffs. The plaintiffs made a contract with McClimons to erect for him a brick building upon a lot in Sulphur Springs, and sublet the contract for the wood work to the defendant Denton. The notes in controversy were part of the proceeds of said contract, and were secured by a mechanic's lien on the building, which was duly recorded and fixed. Denton had no interest in the notes. They were the property of the plaintiffs, who in August, 1889, intrusted them to Denton for the purpose of sale to one Womack. This was done at the suggestion of Denton, who told J. A. Wilson, the active member of the firm of J. O. & J. A. Wilson, that he could sell the notes to Womack for $2000. Denton failed to sell to Womack, and on Wilson's request for the notes afterward put him off on one pretense and another until about Christmas, when Denton claimed that Wilson owed him, and refused to turn the notes over until they settled. Wilson was ready to settle and endeavored to do so, but they failed to come to terms, and soon fell out. Finally Denton asserted a claim of ownership, claiming that he had bought the notes from the Wilsons for what they were owing him. Denton made several efforts to sell the notes, and Wilson notified one party not to buy them from Denton.

Cotter & McMullan were merchants, and had known Denton for a long time and had confidence in him. They knew of his dealings with the Wilsons and their intimacy. They regarded both Denton and the Wilsons as reliable and honorable men; had never heard of the differences between them, and knew that during the year 1889 the Wilsons had built several houses, and that Denton did the wood work for them.

About January 27, 1890, Denton went to Mr. Cotter, told him of the notes, and offered to sell them to him for $1900, as he needed money. But Cotter did not then buy. A day or so afterward Denton again offered to sell the notes to Cotter, showed them to him, and told him that they were written by Judge Putnam, who had drawn the contract fixing the lien. He agreed to trade the notes to Cotter & McMullan for their notes, because he could get the money on their notes. No trade was made then. Cotter conferred with his partner, and they agreed to offer Denton their notes for $1800 for the McClimons notes. Denton found a purchaser for Cotter & McMullan's notes, and on February 1, 1890, again went to see Cotter & McMullan, and sold the notes to them for their two notes for $900 each and his store account for $36. Cotter & McMullan drew up and signed notes payable to Denton, who requested notes payable to his wife. The first notes were then destroyed, and notes were executed payable to Denton's wife, and were soon after sold by Denton to one Lacey for face value. Cotter was somewhat suspicious, but Denton explained that he was indebted to his wife and wanted the notes in her name, so that the money would be hers. This explanation satisfied Cotter, and the transaction was closed. All the parties who had had any connection with the notes—McClimons, the maker; the Wilsons, the payees; and Judge Putnam, who drew the papers—resided in Sulphur Springs, and Cotter met them daily, but did not speak to any of them about the transaction or the notes. He sent the notes by the defendant Denton, who was going to Dallas, to be placed in the hands of parties there for collection. His explanation of this was that McClimons was slow pay, that the semi-annual interest would soon fall due, and that if McClimons knew that he owned the notes he would ask for an extension, which he did not care to give; and that as Denton was going to Dallas, he sent them by him, and they were sent through a bank at Dallas to the Sulphur Springs bank for collection. Cotter bought the notes, relying implicitly upon Denton's statements, which he believed to be true. He had no actual notice of any claim the Wilsons had in the notes, and McMullan had none, and they believed when they bought the notes that they belonged to Denton, and that they were getting a good title to them.

Upon the question of notice the learned judge who tried the case below found that Cotter & McMullan did not have actual notice of the invalidity of Denton's title to the notes, and that the facts were not sufficient to charge them with constructive notice. Appellants con-

tend that the latter finding is not supported by the evidence; also that the court erred in its conclusion of law that the character of constructive notice necessary to charge the intervenors must be such as to show a want of good faith.

The ordinary rule of constructive notice which applies to the purchase of property is not applicable in the case of negotiable instruments. As promotive of their circulation a liberal view is taken, which makes the bona fides of the transaction the decisive test of the holder's right. He is entitled to recover upon it if he has come by it honestly. Greneaux v. Wheeler, 6 Texas, 525; 1 Dan. Neg. Inst., sec. 775. It matters not how the vendor came in possession of the bill or note, whether by theft, or fraud, or honestly; the title of the transferee does not depend upon the title of the vendor, but upon his possession, and if the buyer has acted in good faith and paid a valuable consideration his title can not be impugned. An early English case (Gill v. Cubitt, 3 Barn. & Cress., 466,) laid down the principle, that although the holder had given value for the bill or note, yet if he took it under circumstances which ought to have excited the suspicions of a prudent and careful man, he could not recover. This was a departure from the earlier rule, which regarded the bona fides as the crucial test by which it was to be determined whether or not the purchaser should be protected against defenses that would be valid against the transferer of the note. But the earlier rule was soon again reverted to, and afterward made even more liberal, and it became the law, that while gross negligence might be evidence tending to show mala fides, and as such admissible, it did not in itself amount to proof of mala fides, and was not sufficient to deprive the holder of his right to recover. If it should be left to a jury to determine as to the degree of caution which a prudent man must exercise on taking such an instrument, it would lead to much perplexity and to frequent injustice. This is the law deduced from the English decisions by Mr. Daniel in his admirable work on Negotiable Instruments, section 770, et seq.

A review of the American authorities shows by far the greater number concurring in the principle which has been finally established as the law of England. Id., sec. 775. We think the entire question is one of *bad faith*, and that our Supreme Court adopted this rule as early as the case of Greneaux v. Wheeler. Judge Hemphill said, in Weathered v. Smith, 9 Texas, 625: "The possession of the instrument, acquired in good faith in the usual course of trade, gives property, whether the person from whom it was received have title or not. This doctrine, founded on the necessity of securing the benefits accruing from the free circulation of commercial paper, had its origin in the case of Miller v. Race, 1 Burrow's Reports, 452, in application to bank notes, and was subsequently extended to all negotiable instruments transferable by delivery." Thus early in our State was this most salu-

tary principle from the older commercial States and from England adopted; at a time, too, when its commerce was in its infancy. It is a rule that is now far more imperatively demanded by our commercial interests, which have since then grown to much greater proportions than they were in those·days.

We think the other questions presented bear upon the question of good faith. It will be observed that our Revised ·Statutes (art. 265) does not use the qualification "usual course of trade." But this can not affect the rule, for it would be admissible always to establish mala fides by circumstantial evidence, and the manner in which the title should be acquired would be a subject of inquiry as tending to establish the main fact of good or bad faith. Again, we do not suppose it would be contended that the omission of this qualification would shut off defenses to a note transferred to a trustee for creditors and holders of like character. So it may well be doubted whether the omission of this usual restriction in our statutes really amounts to anything. Davis v. Gray, 61 Texas, 506; Kauffman & Runge v. Robey, 60 Texas, 310. Cotter & McMullan bought the notes at a discount in order to make a profit on them. They got them for less than their face value, but not at so great a discount as to suggest fraud. In the case of Greneaux v. Wheeler, the note had been purchased from an attorney at law, who held it for a client, at 50 cents on the dollar.

There must be a valuable consideration paid for the note in order to protect the purchaser. It is not necessary that the consideration should be full and adequate. Its inadequacy may, however, be considered as a circumstance on the issue of good faith. It was shown that Cotter & McMullan paid for the notes in controversy with their own notes. Other negotiable notes of the purchaser constitute a valuable consideration; and the giving of a note by the purchaser of a negotiable instrument is a sufficient consideration to make him a bona fide holder for value. Randolph on Comm. Paper, sec. 479. It has been held in this State that a note payable to bearer given for land is a valuable consideration. Cameron v. Romele, 53 Texas, 244; Dodd v. Gaines, ante, 429.

The purchasers of the notes, Cotter & McMullan, could not have been affected by any knowledge that Lacy had of the invalidity of Denton's title; so it will not be necessary to inquire whether or not the finding of the court that Lacy was an innocent purchaser of the notes executed by Cotter & McMullan to Mrs. Denton is supported by the evidence.

We find no error in the judgment of the court below, and recommend that it be affirmed.

*Affirmed.*