## LAMM v. BATES.

### No. 2412.

Court of Civil Appeals of Texas. El Paso.
March 13, 1930.

Rehearing Denied April 3, 1930.

W. M. Groce and Lewright & Lewright, all of San Antonio, for plaintiff in error.

Arnold & Cozby, of San Antonio, for defendant in error.

WALTHALL, J.

Mrs. Fannie Evans Bates brought this suit against Louis A. Lamm and Thomas M. Patton for title and possession of a negotiable promissory note for $2,000, and for a deed of trust and insurance policy pertaining to said note, for removal of cloud from title to certain real estate, and for general and special relief. No service was had on Patton, and suit was dismissed as to him. Lamm answered that for a valuable consideration paid by him to one W. S. Conness, and without notice of any right or title of Mrs. Bates, he had bought said note and obtained possession and title thereto from one W. S. Conness, the maker of said note, together with the

deed of trust and insurance policy; he pleaded estoppel against Mrs. Bates.

The case was tried without a jury. The court made and filed findings of fact, which, abbreviated, are in substance as follows:

On February 4, 1925, Mrs. Bates, a widow. loaned $2,000 to W. S. Conness, for which Conness, on said date, executed and delivered to Mrs. Bates his negotiable promissory note for said amount, the note made payable to the order of Mrs. Bates, due three years after date, the note in question here. To secure the payment of said note Conness executed and delivered to Mrs. Bates a deed of trust, with power of sale, on the real estate described, then owned by Conness. The deed of trust was duly recorded on February 6, 1925. Conness thereafter conveyed said real estate to Patton, who, as part consideration, expressly assumed the payment of said note. That deed was duly recorded. Conness at the times of the above transactions, and for many years prior thereto, and until May, 1928, was in the real estate and insurance business in San Antonio, and at said times had in his employ in his real estate office one C. G. Bierbower.

At all of the times mentioned above, and up to February 4, 1928, the due date of the note, Mrs. Bates owned and had the actual physical possession of said note, the deed of trust, and papers relating to said note.

On February 4, 1928, said Bierbower, as agent and employee of Conness, called Mrs. Bates' attention to the fact that said note matured on that date, advised her that Patton, the then owner of the real estate described in the deed of trust securing said note, desired an extension in the time of payment of said note, and requested Mrs. Bates to bring the note and the papers relating thereto to the Conness office, and leave same with him, Bierbower, in order that he might prepare a written extension agreement to be executed by Patton and wife, extending the payment to February 4, 1931.

As requested, and for the sole purpose of having Bierbower obtain therefrom such necessary information to enable him to prepare such extension agreement, Mrs. Bates handed to Bierbower said note and the said papers relating thereto, with express understanding that, after said extension agreement was prepared and executed by Patton and wife, he would then return to her (Mrs. Bates), her said note and said papers, together with said extension agreement.

The said note, payable to the order of Mrs. Bates, was never indorsed by her, nor did she at any time execute any transfer, assignment, or release thereof; nor did she deliver said note to Bierbower for sale or collection, nor did she authorize Conness or Bierbower or any one else to sell or otherwise dispose of said note.

Some months prior to February 21, 1928, Louis A. Lamm left with Conness a sum of money in excess of $2,000 for the purpose of having Conness invest same for him in the purchase of a secured note or notes, and that thereafter, on said last-named date, without the knowledge or consent of Mrs. Bates, Conness, either in person or through his agent and employee, Bierbower, purported to sell to Lamm the said $2,000 note involved here, and did in fact deliver said note to Lamm, the deed of trust, the insurance policy and papers pertaining to said loan; that Conness kept said $2,000 paid by Lamm for said note. At the time Lamm was handed the said note and papers said note was then past due. The note payable to the order of Mrs. Bates was not indorsed by her. The (fire) insurance policy had attached thereto a mortgage clause in favor of Mrs. Bates. The deed of trust handed to Lamm showed upon its face that Mrs. Bates was the beneficiary therein. Lamm examined said insurance policy, and requested that Conness' insurance department attached a new mortgage clause thereto in his favor which was done. Lamm did not know Mrs. Bates or her dealings with Conness, made no investigation or inquiry of any one as to her or her ownership of said note and papers, thought that Conness owned the note, and that he was buying the note from Conness as owner. Lamm did not request Conness or Bierbower to have the note indorsed, or transferred or assigned, but was told that an extension agreement would later be executed by Patton.

At the instance of Mrs. Bates and Patton, Bierbower prepared a written extension agreement in favor of Mrs. Bates extending the payment of said note to February 4, 1931, signed by Patton and wife, and Mrs. Bates. Neither the note and papers, nor the proceeds from the sale thereof, were ever returned to Mrs. Bates. Conness had never before sold any note for or belonging to Mrs. Bates, and had never been authorized by her to do so, nor had she represented to Lamm or to any one that he was her agent to sell her note. Conness disappeared in May, 1928, and Mrs. Bates did not know until after he had disappeared that he had purported to sell her note to Lamm. On hearing of Conness' disappearance, Mrs. Bates immediately demanded of Bierbower the return of her note and papers and extension agreement, executed by Patton and wife. Bierbower returned the extension agreement; the note and other papers were not returned, but were found to be in the possession of Lamm's attorney, who refused, on demand, to return them to Mrs. Bates; thereupon this suit was brought by Mrs. Bates.

The court found that Lamm was negligent in purchasing the note, the note made payable to the order of Mrs. Bates, owned by her, and not indorsed, or transferred or assigned

by her, the deed of trust naming her as beneficiary and the fire insurance policy having a mortgage clause in her favor, and Lamm having made no inquiry or investigation as to ownership of the note, and not requiring a transfer or indorsement of the note.

The trial court found that Mrs. Bates exercised reasonable care and diligence in the entire transaction, and was not estopped from recovering judgment for the note and other papers.

The court entered judgment for Mrs. Bates and against Lamm for the recovery of possession of said note and papers in all things as prayed for. Appellant duly filed assignments of error, and prosecutes this suit by writ of error.

### Opinion.

Appellant submits four propositions upon which the appeal is predicated.

The record does not contain a statement of facts.

Appellant's propositions are lengthy, and, without stating them at length, they are predicated upon the general proposition that the facts set forth in the court's findings of fact would, as a matter of law, preclude Mrs. Bates from recovering judgment against Lamm for the title and possession of the note and the papers pertaining thereto. (The point of the insistence being that Mrs. Bates having placed the note and other papers in the hands of Conness, the maker of the note, after its maturity, gives rise to a presumption that the maker of the note has paid the note to the original payee, and that the maker of the note is entitled to again put said note in circulation as a negotiable instrument, and that an innocent third person, who in good faith, and without notice of the inside facts, and for a valuable consideration, deals with the maker of the note in buying it, is protected against the original payee though owner of the note)

Another proposition suggests that, by reason of the facts found by the trial court, Mrs. Bates is now estopped from asserting ownership and right to possession of the note and the papers relating thereto.

We are of the opinion that appellant's propositions under the facts found by the trial court do not properly state the law of this case.

An instrument, such as the note in question, is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. Where the note, as here, is payable to the order of the holder, it is negotiated by the indorsement of the holder, completed by delivery. The indorsement must be written on the instrument itself or upon a paper attached thereto. Article 5934, sections 30 and 31, of the Negotiable Instrument Act. Had

the note been made payable to bearer, and was delivered, there might be some merit in appellant's contention. Sloan v. Gilmore (Tex. Civ. App.) 167 S. W. 1089, 1090; Ross v. Smith, 19 Tex. 171, 70 Am. Dec. 327; Walker v. Wilson, 79 Tex. 185, 14 S. W. 798, 15 S. W. 402; Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908.

But such is not this case; the note was made payable to order and not to bearer. The note was not "negotiated back" to Conness, as provided by section 50 of the same article (Rev. St.), which may be done because not indorsed by Mrs. Bates, and completed by delivery. The indorsement of the note by Mrs. Bates and a delivery of it is the only method recognized by the Negotiable Instrument Law by which a third person can become a legal holder or owner of it. As said by Judge Higgins in Sloan v. Gilmore, supra, speaking for this court, in a case similar in its facts to the case at bar: "The only evidence of ownership plaintiff conferred upon Davis was that she intrusted him with the possession of the note, and this is insufficient to preclude her from asserting her title. If a contrary holding were made, no owner of a note payable to order could afford to intrust its possession to a bailee."

While our statute makes a note "negotiated by the indorsement of the holder completed by delivery," and by article 5948 defines "delivery" to mean a "transfer of possession, actual or constructive, from one person to another," we think the possession of the note in the case at bar, in the hands of Conness, was so qualified that there was not, in contemplation of the statute, a transfer by delivery of the note by Mrs. Bates to Conness or Bierbower. Delivery is the final step necessary to a proper and legal possession. True, the note was by Mrs. Bates placed in the possession of Conness and Bierbower, but such possession raised only a prima facie presumption of delivery; such presumption may be rebutted, and the purpose and extent of possession shown which the findings of the court show was done.

Appellant says that "the findings of the trial Judge show that he found in favor of Mrs. Bates solely and only because of her failure to indorse the $2,000.00 note"; and that under the present law of Texas such lack of indorsement is utterly immaterial, and refers us to a number of cases to sustain his propositions that "the holder of a negotiable instrument by an assignment not in writing is placed upon the same footing as an indorsee at common law," and "it matters not how a negotiable note has been assigned. Though the transfer be not evidenced by a writing, it is placed upon the same footing as a transfer by indorsement."

Some of the above propositions state a correct legal proposition, but they have no

basis in the facts found by the court. In Word v. Elwood, 90 Tex. 130, 37 S. W. 414, 415, relied on by appellant, the Supreme Court says: "An instrument is 'assigned,' within the meaning of this statute, when it is transferred from one to another. The form of the transfer, and whether written or verbal, is immaterial."

In that case the note had the following written on the back: "For value received, we hereby guarantee the payment of the within note at maturity at any time thereafter, waiving demand, notice of non-payment and protest. (Signed) Berg & Story." The note was drawn by Word to Berg & Story, or order. The certified question was: "Was the written contract upon the back of the note an indorsement or an assignment of the same, such as, within the meaning of the law merchant regulating the transfer of negotiable paper, would avail the holder, as an innocent purchaser for value before maturity, to avoid a plea of failure of consideration urged by the maker?" The court, in discussing the certified question, said that, in the absence of a statement of the court certifying the question showing the contrary, the court would presume that the transaction is governed by our Revised Statutes, and quoted (Rev. St. 1895) article 307, now, with some changes in verbiage, article 568.

In that case the note had been assigned by the writing on the back, and the court held that an instrument is assigned within the meaning of the article quoted when it is transferred from one to another, and that the form of the transfer whether written or verbal is immaterial. In Hatley v. West Texas Nat. Bank (Tex. Com. App.) 284 S. W. 540, 542, refers to Word v. Elwood, and Judge Speer, in speaking of an assignment of a fund by a check, says that the "assignment may be written or oral and may be shown by circumstances, or by any character of legitimate evidence," and refers to several cases so holding.

But in all of the cases there is no suggestion that an assignment or transfer of a negotiable note payable to order of the holder, or of a negotiable chose in action, to pass the title or interest therein, need not in some manner show a making over to another the right or interest therein, as distinguished from a mere delivery of possession as in this case. In Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 292, 42 L. R. A. (N. S.) 1084, our Supreme Court adopted Mr. Blackstone's definition in his commentaries on the word assignment, in which it is said: "An assignment is properly a transfer, or making over to another, of the right one has in any estate."

Our Negotiable Instrument Act does not use the word "assignment" in connection with negotiations of instruments such as a negotiable note, nor does it define either term, but uses the term "transfer." The above definition says an assignment is a transfer.

Referring again to Sloan v. Gilmore, supra, it is there said that the only evidence of ownership Mrs. Gilmore conferred upon Davis was that she intrusted him with the possession of the note, and this is insufficient to preclude her from asserting her title to the note.

Appellant, in referring to Sloan v. Gilmore, says: "This court did not in that case even mention Word v. Elwood, or that line of Texas cases, nor the radical change made in our law by means of the statute construed in Word v. Elwood."

We have referred to the Word v. Elwood Case for the reason solely that appellant referred to it as sustaining his position. We do not consider the case sustaining his contention, nor as having made a "radical change," or any change, in our law by the construction placed upon the article of the statute referred to; and, while the case has often been referred to, no case refers to it as effecting any change in our law.

The doctrine of estoppel has no application under the facts found by the trial court.

The case is affirmed.