**RENCHIE v. JOHN HANCOCK MUT. LIFE INS. CO.**

No. 14544.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 10, 1943.

See, also, John Hancock Mutual Life Ins. Co. v. Sally, Tex.Civ.App., 163 S.W.2d 651.

Graves & Collins, of Fort Worth, for appellant.

Thompson, Walker, Smith & Shannon and Luther Hudson, all of Fort Worth, for appellee.

SPEER, Justice.

By a second amended petition plaintiff, Sylvia Sally Renchie, joined by her then husband, Wright Renchie, sued defendant John Hancock Mutual Life Insurance Company for recovery of $1,100 balance unpaid on two certificates issued by defendant on the life of Smith Sally for $500 and $1,000 each.

At the conclusion of the testimony, upon motion by defendant, the court instructed the jury to return a verdict for defendant. A take-nothing judgment· was entered against plaintiffs, from which this appeal was perfected.

This case has been before us on a former appeal. John Hancock Mut. Life Ins. Co. v. Sally, Tex.Civ.App., 163 S.W.2d 651. The case was reversed on that appeal on grounds not before us now. The insufficiency of the petition pointed out by us on that appeal has been cured by amendment. On motion for rehearing at the instance of all parties we made a statement of the material facts and expressed our views as to the applicable law. The facts at the last trial were substantially the same as at the former.

To make this opinion complete within itself, we relate what we consider the pertinent facts.

For some reason, not important in this appeal, names of various parties and the named beneficiary are spelled differently. The insured's name is spelled "Sallie", while plaintiff, who asserts that she was his wife, spells her name "Sally". The beneficiary is variously referred to as "Louvenia", "Louvenie" and "Luvenie" Sallie, and "Sally".

Defendant issued its group insurance policy to Universal Mills, Inc., with privilege of employees purchasing individual certificates of life insurance. Smith Sallie, an employee, purchased two certificates, one for $500 and another for $1,000 and in his application named Luvenie Sallie, his wife, as beneficiary. Smith Sallie died December 10, 1940, while in the employ of Universal Mills. The named beneficiary, Luvenie Sallie, made proof of death and demanded payment of the certificates, and at the same time made an assignment, with notice to defendant, of $400 of the insurance money to an undertaker. On December 21, 1940, the defendant issued its checks, one for $400, payable to the undertaker, and another for $1,100 payable to the order of Louvinie Sallie. On the back side of the last mentioned check appears this language: "Endorsement by the payee or payees shall constitute a receipt in full for the payment of the account stated in voucher referred to on the face hereof." Defendant sent the two checks to its local agent, Mr. Maer, for delivery. They were received by Mr. Maer on the morning of December 27, 1940. Mr. Maer delivered the $400 check to the undertaker that forenoon and delivered the $1,100 check to Mr. Martin, secretary-treasurer of Universal Mills, about noon of the same day. Mr. Martin had advised Mr. Maer that Luvenie Sallie had borrowed $50 from Universal Mills and promised to repay it out of the insurance money, and Maer said this was the reason he delivered the check to Martin for delivery to Luvenie. Some time in the forenoon of December 28, 1940, Martin took the $1,100 check to Luvenie Sallie, had her to endorse it beneath the printed words hereinabove quoted, gave Luvenie Sallie the check of Universal Mills for $1,050, and received the $1,110 check back from Luvenie, thus, as Martin says, collecting the $50 owing by Luvenie to Universal Mills.

In the afternoon of December 28, 1940, subsequent to the transaction between Martin and Luvenie concerning the two checks (Maer said it was after he had eaten supper), Sylvia Sally, the plaintiff here, called Maer and told him she was the real wife of Smith Sally (Sallie), that Luvenie was

not his wife, and that she (Sylvia) wanted to collect Smith Sallie's insurance. Maer told her he had already paid the insurance money to Luvenie Sallie, the beneficiary named in the policy.

The delivery of the $1,100 check by Martin to Luvenie, her endorsement and exchange of it to Martin for Universal Mills' check of $1,050, was on the forenoon of Saturday and all the City banks closed at noon. Neither check was presented or deposited with a bank that day.

Plaintiff Sylvia Sally procured counsel, after her conversation Saturday evening with Maer, and counsel endeavored to contact both Maer and Martin on Sunday, but failed. Monday morning around 9 o'clock he told both Maer and Martin that he represented plaintiff Sylvia Sally; that she was the real and only legal wife of Smith Sallie, deceased, and was entitled to the insurance money; both Maer and Martin told him the insurance company's check had already been delivered to Luvenie and there was nothing they could do about it. Counsel learned of the manner in which Martin had exchanged checks with Luvenie and asked both Martin and Maer to stop payment of both checks—that of defendant for $1,100 and Universal Mills' check for $1,050. Each declined to do so. Maer stated that he had no authority to stop payment on defendant's check. Neither of the checks had at that time been presented to the bank for payment or deposit.

It was stipulated between the parties that Smith Sallie and plaintiff Sylvia Sallie were legally married in Brazos County, Texas, on March 27, 1920; that each of the certificates of insurance designated Louvinie Sallie as beneficiary; that Smith Sallie and Luvenie Sallie began living together as man and wife under an agreement about March 12, 1929, and continued to live together and cohabit as man and wife until the death of Smith Sallie, on December 10, 1940; that they held themselves out as husband and wife and were recognized as such by their neighbors; that during said period Smith Sallie supported Luvenie, and as his wife she received pecuniary benefits from said relationship. In this connection, however, it was stipulated that plaintiff (Sylvia) did not agree nor concede that Luvenie "was the good faith, putative wife of Smith Sallie."

There was in evidence a marriage certificate dated December 7, 1921, showing the marriage of Luvenia Hughes (Col.) to John Cash (Col.). There is testimony by a deputy district clerk of Tarrant County to the effect that the records in that office do not disclose any divorce proceedings between Smith Sallie and Sylvia Sallie, nor between John Cash and Luvenie Cash.

Plaintiff Sylvia Sally Renchie testified that she came back to Fort Worth (time not stated) and Smith Sallie came to her house and stayed and they lived together as husband and wife. She said she did not obtain a divorce but that Smith told her he had gotten a divorce and she believed it and she afterwards married a man named Martin, and they subsequently separated. She said she knew Luvenie Cash (Sallie) and her husband John Cash; that they separated and Smith Sallie began living with Luvenie and that she talked with Smith about that.

Luvenie Sallie testified that she and Smith Sallie were married in Fisher County by a colored preacher, on March 12, 1929; the preacher had some kind of a paper but she did not examine it to see that it was a marriage license; she had not tried to get a copy of the license nor had she tried to get any one else to do so; that she was married to John Cash at one time, but before she married Smith Sallie, Cash gave her a waiver to sign, saying he was going to get a divorce—she signed the waiver. She said that from the date of their marriage until the death of Smith Sallie they lived together as husband and wife; that he provided her money for clothes and groceries for both of them to eat and that she prepared the food; that they held themselves out to the public as husband and wife and that she had no reason to believe that she would not continue to receive these pecuniary benefits from Smith Sallie in the future. She said she knew Smith had been married to Sylvia but did not know he was married to her when she married him.

The matters related by us are without contradiction in the record and we find little or no effort on the part of these colored people to explain their complicated domestic relations and it is useless for us to try.

There are nine points of error relied upon by plaintiff (appellant here) for reversal. They are in substance:

(1) Failure of the court to submit to the jury the agency of Universal Mills in

delivering the $1,100 check to Luvenie Sallie.

(2) Failure to submit whether or not defendant had notice of the claim of Sylvia Sally (Renchie) to protect itself from dual payment.

(3) Error of the court in holding that defendant did not have notice of plaintiff's claim to protect itself from dual payment.

(4) Failure of the court to submit to the jury whether or not Luvenie Cash Sally was the putative wife of Smith Sally.

(5) Failure to submit whether or not defendant, by the exercise of reasonable diligence, could have known that Luvenie Cash was not the lawful wife of Smith Sally.

(6) Error of the court in holding that Luvenie Cash was the putative wife of Smith Sally.

(7) Error of the court in holding that defendant did not have notice that Luvenie Cash was not the putative wife of Smith Sally.

(8) Error of the court in refusing to submit to the jury whether or not Luvenie Cash had an insurable interest in the life of Smith Sally.

(9) Error of the court in holding that Luvenie Cash had an insurable interest in the life of Smith Sally.

We think it unnecessary to discuss in detail each of the points raised, since they present as many reasons why plaintiff believes the court erred in instructing a verdict for defendant. We shall treat them as such, since plaintiff does not otherwise complain of the instructed verdict.

■ We need not cite authorities in support of the proposition that the court should submit all issues of fact raised by the pleadings and testimony in jury trials; but it is equally true that the court need not submit immaterial matters, the answers to which would not affect the judgment to be entered.

■ The question of agency of Universal Mills is not in the case since irrespective of whether or not it was the agent of the insurance company, the duties, if any, Universal Mills had, by virtue of the acts of Mr. Martin, were only that Martin would deliver the $1,100 check to payee, Luvenie Sallie, and this duty was fully performed on Saturday morning before Martin or any other person connected with Universal Mills knew anything about plaintiff's claim on the following Monday. We are not to be understood as holding that Universal Mills, a private corporation, could become the agent of another corporation such as the defendant in this case. Yet Martin, in his individual capacity, could become such agent. No complaint is made here that the court did not submit Martin's agency to the jury. In any event it is certain that if Martin was such agent, it was for a specific purpose, that of delivering the check to Luvenie. He did this very thing before he knew of plaintiff's claim and his agency then terminated by the completion of his task and when he had notice of plaintiff's claim two days later he was not defendant's agent. 2 Amer.Jur. § 56, p. 50.

■ It is our opinion that when Martin delivered the check to Luvenie and had her endorse it under the stipulated provisions thereon, and gave her the check for $1,050, covering the amount coming to her as between her and Universal Mills, she was in fact paid in full. As a general rule, receipt of a check does not constitute payment but if the parties agree in writing that it shall constitute payment the rule is different. 32 T.J. § 19, p. 658, and cases there cited in footnote.

■ The undisputed facts surrounding the transaction between Martin and Luvenie when the check was delivered to her amounted to a purchase of the $1,100 check of the insurance company by Martin for Universal Mills, and it thereby became an innocent purchaser thereof for value (Wilson v. Denton, 82 Tex. 531, 18 S.W. 620, 27 Am.St.Rep. 908), and could have recovered thereon as against the maker John Hancock Mutual Life Ins. Co. Texas Sporting Goods Co. v. Texas Gulf Sulphur Co., Tex.Civ.App., 81 S.W.2d 805. Universal Mills was not a party to this suit, and if it ever had any responsibility, through Martin as agent of the insurance company, such agency had terminated before it had any information as to plaintiff's claim, and no good reason exists why it was obligated to interfere with payment by the insurance company to the named beneficiary in the certificates of insurance.

Under the provisions of Section 1 of Article 4736a, Vernon's Tex.Ann.Civ.St., absent notice to the insurance company of some adverse claim to the proceeds of an insurance policy, payment by the com-

pany to the named beneficiary discharges the company from further liability. . It is obvious to us that this was done and in such circumstances the only proper judgment that could have been entered was the one entered on the instructed verdict.

█ It is contended by plaintiff that Luvenie Sallie was not the good faith putative wife of the insured, and that the insurance company had knowledge of that fact. In plaintiff's brief it is said that this was pleaded by her (citing such pleading) and that she offered evidence in support of that allegation. No evidence adduced is pointed out in the brief on this point but we are cited to the "entire statement of facts". We have read the statement of facts and find no testimony to support the contention but upon the contrary the uncontradicted testimony of both Maer and Martin refutes the assertion.

█ By points 8 and 9 it is charged as error that the court did not submit to the jury issues of whether or not Luvenie Sallie was the putative wife of insured and whether or not Luvenie had an insurable interest in the life of the insured. If Luvenie was the good faith putative wife of Smith Sallie, whether or not she had an insurable interest in his life was a question of law and not of fact; it is settled that a putative wife has such insurable interest in the life of her asserted husband. Mendez v. Mendez, Tex.Com.App., 277 S.W. 1055. The facts in the cited case were very similar to those before us. Here we have Sylvia Sally (Renchie) · suing the insurance company for $1,100 of the amount due on the two certificates on the life of Smith Sallie, upon the claim that she was his legal wife, and that Luvenie, the named beneficiary, was not his wife and had no insurable interest in his life. Payment on the certificates to the extent of $400 had been made to the undertaker and is not involved. Plaintiff Sylvia Sally had the burden of proof to show that she was the legal wife of insured and was entitled to payment. This would mean that she must establish that Luvenie, the named beneficiary, to whom payment had been made without notice of any adverse claim by Sylvia, had no insurable interest in the life of Smith Sallie. Luvenie was not a party to the suit and, of course, had no responsibility of proving anything. We are of opinion that Sylvia failed to produce any testimony of probative value to discharge the burden of proof enjoined

upon her. The nearest approach was that Sylvia and Smith Sally were legally married in March, 1920; they separated and at some time later (we do not know when) Smith told Sylvia he had procured a divorce and she believed it and married again; that no divorce was procured by Smith Sally in Tarrant County. It was also shown that Luvenie had been married to John Cash but she said before she married Smith Sally, Cash had given her a waiver of citation to sign, saying he would get a divorce—she signed the waiver, and said she then married Smith Sallie. No divorce was granted to Cash in Tarrant County. These matters go to the good faith of Luvenie in the belief that she was legally married to deceased. Her testimony that she married deceased in Fisher County stands undisputed. She said she knew both Sylvia and Smith and knew they had been married, but did not know they were married when she and Smith married. Sylvia believed she was divorced from Smith because she remarried, presumptively under that belief. The fact that no divorce between either of the two couples was granted in Tarrant County does not preclude such an order being in some other county having jurisdiction. There may have been a real impediment in the way of a legal marriage between Luvenie and deceased, but none was shown, unless by remote presumption and conjecture.

█ It was stipulated as fact that Luvenie and Smith began living together as man and wife under an agreement on or about March 12, 1929 (The date on which Luvenie said they were married in Fisher County) ; and continued to so live and cohabit until the death of Smith Sallie on December 10, 1940; they held themselves out to the public as husband and wife; that Smith Sallie supported Luvenie during that time and that she received pecuniary benefits from him during the whole period of nearly eleven years. In the absence of any testimony that Luvenie's relations with the insured were not under the belief that they were lawfully husband and wife, in one of the manners recognized by law, she would at least be a putative wife. As such, she had an insurable interest in his life. Mendez v. Mendez, supra, and authorities there collated. There being no issue of fact raised by the testimony as to whether or not Luvenie was a putative wife of the in-

sured, it would have been improper to submit such an inquiry to the jury.

For the reasons stated, we see no error in the act of the trial court in giving the instructed verdict and entering judgment thereon; therefore the judgment should be and is affirmed.