### BAILEY v. M. G. CLARK & SON.

### No. 11732.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 29, 1947.

Rehearing Denied Nov. 26, 1947.

Kelley, Looney, McLean & Enochs and Oxford, Oxford & Ramsour, all of Edinburg, for appellant.

Greer, Cox & Patterson, of McAllen, for appellees.

MURRAY, Justice.

This suit was instituted by M. G. Clark and Son, a partnership, composed of J. S. Jones and R. G. Jones, against W. C. Bailey, seeking to recover the sum of $342.59, being the amount of a certain check dated October 26, 1946, payable to the order of plaintiff and signed by defendant. The check was given by defendant to plaintiff but before it was presented for payment to the First National Bank of Edinburg, Texas, the bank upon which it was drawn, defendant stopped payment and the check was not paid by the bank.

The trial was before the court without a jury and resulted in judgment in plaintiff's favor for the amount of the check, and defendant, W.C. Bailey, has prosecuted this appeal.

One Peter Rabbit had been employed by Clark & Son and was short in his accounts. He asked his friend W. C. Bailey, appellant, to help him out. Bailey went with Rabbit to the office of Clark & Son, where he gave the check here sued upon in payment of Rabbit's shortage.

It is in effect conceded by the parties that the check was given without any consideration passing to Bailey, and was given for the debt of another, and would not be a binding obligation of Bailey unless by the giving of the check and the understanding of the parties a novation was created in which Bailey was substituted as debtor in place of Rabbit, or unless the check was understood to be a final payment of Rabbit's debt, and the settlement of the debt was not to depend upon the final payment of the check by the bank upon which it was drawn. The trial court rendered judgment in favor of M. G. Clark & Son and as no findings of fact were requested we must presume that the court found that a novation was ef-

fected, or that Rabbit's debt was extinguished by the mere giving and accepting of Bailey's check, if there is evidence in the record which will support either finding.

As to what transpired at the time of the giving of the check, we quote from the testimony of H. A. Kunkel, manager and bookkeeper of M. G. Clark & Son: "Mr. Rabbit was with him (Bailey) standing there, he said, 'Would you want a cup of coffee,' I said, 'No thanks, I do not drink coffee, if you have anything to settle let us go in the office and talk it over.' We went back there in the office and talked it over—Mr. Bailey began to talk about straightening matters up about what Bailey had done—finally he said, 'Let Rabbit speak, he can state it better than I can,' then Rabbit spoke, he said his wife was coming in and he needed some money and had taken some money and made tickets to take care of the money he had taken out, I said, 'In other words, you made out fictitious invoices?' and he said, 'That is right.' I said, 'Can you identify those invoices?' He said, 'Yes, sir.' He picked out those invoices and I added them up on the adding machine and they amounted to $342.-59. Mr. Bailey then said he was going to pay it, he got his check book out and paid for it. Of course we accepted his check for that debt. Then we walked out and I asked Mr. Bailey, 'Is that check all right?' He said, 'Yes.' We talked casually—he somehow or other apologized for Rabbit's misbehavior or what he had done and of course I said I was sorry it had happened, and that is about the substance of the whole thing."

There is nothing in this testimony, or any other testimony in the record, which indicates that H. A. Kunkel accepted this check from Bailey in any other manner or with any other understanding than is usual and customary in business.

In 32 Tex.Jur., beginning on page 658, Section 19 reads as follows:

"Checks.—A check may be accepted as a payment so as to discharge the debt; as to whether it was so accepted is a question of fact. To have the effect of payment both the debtor and the creditor must intend the paper to discharge the obligation. Consequently, mere delivery to the creditor of a check drawn by the debtor does not in itself constitute payment or discharge in the absence of an express agreement to that effect, or unless and until it is accepted as payment and actually paid in due course; and this is true of a cashier's check drawn by a bank for money on deposit.

"A check merely authorizes the bank to pay the amount shown on its face out of the money to the credit of the drawer. While checks are expected to be paid on presentation, reliance on that expectation does not bind the holder unless the check itself is actually paid, except where there has been gross negligence in its presentation, resulting in injury to the bank or some of its depositors. In other words, payment by check, in the absence of an agreement to the contrary, is always conditional on the payment of the check, upon dishonor of the paper the creditor may enforce the original obligation.

"It follows that for a check to have the effect of payment the drawer must have funds to his credit in the bank, and the bank must be in a position to pay the check on demand; hence the giving of a check upon a bank which confesses its inability to pay and refuses to pay, is not payment. But when the check is paid by the drawee bank, the payment becomes an absolute one, and discharges the original obligation."

Appellees contend that the evidence does sustain an implied finding that the check was accepted as payment in full of Rabbit's debt and that thereby a novation was accomplished whereby Rabbit was fully released from his indebtedness and Bailey was substituted in his place. To support this contention we are cited to the following portion of Kunkel's testimony:

"I said, 'Can you identify those invoices?' He (Rabbit) said, 'Yes, sir.' He picked out those invoices and I added them up on the adding machine and they amounted to $342.59. Mr. Bailey then said he was going to pay it, he got his check book out and paid for it. Of course we accepted his check for that debt. Then we walked out and I asked Mr. Bailey, 'Is that check all right?' He said, 'Yes.'"

We cannot construe this testimony as meaning anything more than that this check was given and accepted in the usual and

customary way in which all checks are given and accepted, and subject to the well recognized rule of law that if the check is not paid when presented there is no extinguishment of the original debt.

 The giving of the check in this case, with no understanding of the parties either expressed or implied that Rabbit's indebtedness to M. G. Clark & Son was thereby extinguished was not sufficient to constitute a novation. Waggoner Bank & Trust Co. v. Gamer Co., 113 Tex. 5, 213 S.W. 927, 6 A.L.R. 613; Friends in Need Society of Bell County v. Peterson, Tex.Civ.App., 9 S.W.2d 1110; Jefferson Standard Life Insurance Co. v. Lindsey, Tex.Civ.App., 94 S.W.2d 549, 552; Renchie v. John Hancock Mut. Life Ins. Co., Tex.Civ.App., 174 S.W.2d 87; Ward v. Tadlock, Tex.Civ. App., 183 S.W.2d 739; Mashek v. Leonard, Tex.Civ.App., 186 S.W.2d 745; 31 Tex.Jur. p. 308, § 12.

If the check herein may be regarded as a promise on the part of Bailey to pay the debt of Rabbit, it was not binding on Bailey because, under the facts herein, it was not based on a consideration. Santikos v. Hamilton-Truner Grocery Co., Tex.Civ. App., 208 S.W. 560.

In Witt v. Wilson, Tex.Civ.App., 160 S.W. 309, 310, it is said: "In Golden City Banking Co. v. Greisel et al., 161 Mo.App. 477, 144 S.W. 166, the subject of the controversy was a promissory note for $353.-40, executed by Greisel and others to the banking company. The banking company had paid a check for the same amount drawn on it by the Oklahoma & Golden City Railroad Company, although said road had no funds on deposit in the bank at the time, and the amount of the check thus became an overdraft against the railroad company. This overdraft was later objected to, and the defendants in the suit, being officers of the railroad company, gave their personal note, due on demand, for the amount of the overdraft, and the bank brought suit against the signers of said note. In holding that the note was without consideration the court says: 'The substance of the foregoing is that the railroad company owed the plaintiff bank on an account for an overdraft, and that defendants gave the note in suit, promising to pay a sum they did not owe. No benefit accrued to defendants; on the other hand, no detriment was occasioned to plaintiff. If one takes a note for an account, the original debt is not extinguished unless that be the agreement (citing cases). In this instance defendants gained nothing, nor had plaintiff lost anything, for it still has a right in law to hold the railroad company for the overdraft.'"

The judgment of the trial court will be reversed and judgment here rendered that appellees take nothing.